

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| 01 COMMUNIQUE LABORATORY, INC., ) | |
| Plaintiff, ) | |
| V. ) | Civil Action No. 1:10cv1007 |
| ) | |
| LOGMEIN, INC., AND ) | |
| DELL, INC., ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant LogMeIn, Inc.'s Motion for Claim Construction and Summary Judgment of Noninfringement.

Plaintiff 01 Communiqué Laboratory, Inc. ("01") is a Canadian company and the holder of U.S. Patent No. 6,928,479 ("the '479 Patent").

LogMeIn is a Delaware corporation headquartered in Massachusetts. Introducing its products beginning in 2004, LogMeIn has become a supplier of computer remote access products, having about an 18% market share.

The '479 Patent is directed to a system, method, or program for providing access to a personal computer from a remote computer over the internet. 01 has accused LogMeIn of infringing twenty claims

1

of the '479 Patent.

All of the asserted '479 claims require that the system, method, or program have a "locator server computer" that "includes a location facility."

The claims of the '479 Patent identify which functions the "location facility" is required to perform. The claims require that the location facility create communication sessions between the remote computer and personal computer. That location facility must receive the request for communication with the personal computer from the remote computer and must locate the personal computer and determine the then current location of the personal computer. The location facility also must create a communication channel between the remote computer and the personal computer.

In 2007, a third party (Citrix) requested re-examination of the '479 Patent. The PTO granted the re-examination and rejected all of the claims of the '479 Patent as unpatentable in light of the prior art. The PTO maintained this rejection despite 01's initial arguments, leaving 01 one final opportunity to overcome the rejection before the patent was held invalid.

To overcome this rejection, 01 submitted materials to the PTO, including sworn declarations of its expert, Dr. Gregory R. Ganger. In these sworn declarations, 01 and Dr. Ganger represented to the PTO that the '479 claims did not cover certain subject matter and

2

had a certain, limited meaning to persons skilled in the art. The purpose of these representations was to demonstrate to the PTO that the claims were different from the prior art and thus overcome rejection of the claims.

Specifically, 01 represented that the language of the claims requires that the location facility itself creates the communication channel and that one of ordinary skill in the art would not view this language to be satisfied by an alleged location facility that is simply used by some other component that creates the communication channel.

01 further represented to the PTO that one of ordinary skill in the art would not view these requirements of the '479 Patent claims to be satisfied if the location facility is only used by some other component that itself creates the communication channel. One of ordinary skill in the art would also not view these requirements to be satisfied if the location facility only enables or facilitates some other component that creates the communication channel. Assisting some other component that creates the communication channel is not the same as creating the communication channel. The '479 Patent claims require the location facility to do the latter. Thus, 01 asserted to the PTO that the location facility that must locate the personal computer must also itself create the communication channel between the remote computer and personal

3

computer and cannot merely "assist" some other component that does so.

01 represented this distinction to the PTO in an analogy to a telephone book. A telephone book that lists a number does not create a telephone call to the number, nor does an information service that gives a person a number to call create the call unless the operator himself or herself makes the connection.

01 used these representations about the limited scope of its claims to overcome the rejection of its claims by the PTO in light of the prior art.

To overcome rejections based on the "ILS" and "NetMeeting" prior art references, 01 represented to the PTO that all '479 Patent claims require that the location facility create a communication channel between the remote computer and the personal computer. It is not enough for the location facility to assist, enable, or be used by some other component (e.g., the remote computer) that creates the communication channel. The location facility must create it.  And in the systems described in the ILS and NetMeeting references, there is no location facility that creates the required communication channel.

To overcome rejections based on the "NAT P2P references, 01 represented that in the systems described in the NAT P2P references, there is no location facility that creates a communication channel

4

between a remote computer and a personal computer, as required by all '479 Patent claims. Much like with the ILS and WINS servers discussed in earlier sections, this address/well-known server provides Internet Protocol ("IP") address information to peers, which then creates communication channels themselves, as needed—the address/well-known server does not create a communication channel, as required by all '479 Patent claims.

Based on these representations by O1, the PTO withdrew its rejections of the claims of the '479 Patent. The PTO in withdrawing the objection specifically found that regarding the ILS and NetMeeting references, the declarant particularly pointed out that the references do not teach the claim limitation "the location facility creates a communication channel between the remote computer and the personal computer," which is required by the claims of the '479 Patent. The Examiner agreed because the communication channel is created by the application software NetMeeting after the personal computer has been located by the internet locator server. The PTO deemed patentable the claims because the prior art did not teach or suggest that the location facility determines the then current location of the personal computer and creates a communication channel between the remote computer and the personal computer.

Claim construction is a matter of law for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370, 371-73 (1996). Claim

terms are generally given their "ordinary and customary meaning," defined as "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Determining the ordinary and customary meaning of claim language requires that the Court look first to the intrinsic evidence—that is, the claim language itself, the specification, and the prosecution history as to how the patents came to be. Id. at 1314-17. Other evidence constitutes "extrinsic evidence." Id. at 1317.

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." Id. at 1314. The language of the claims is of *paramount importance* to claim construction." E-Pass Techs., Inc. v. 3Com Corp., 473 F.3d 1213, 1220 (Fed. Cir. 2007) (emphasis added). Although claim construction begins with the words of the claims, the claims do not stand alone, but rather are part of "a fully integrated written instrument." Phillips, 415 F.3d at 1315 (quoting Markman, 52 F.3d at 978). Accordingly, the "best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history." Id. Extrinsic evidence is "less significant" but nevertheless "useful" if used properly. Id. at 1317-19.

A patent's prosecution history, which includes re-examination proceedings, is important intrinsic evidence. See Proctor & Gamble

6

Co. v. Kraft Foods Global, Inc., 549 F.3d 842, 848 (Fed. Cir. 2008)
(noting that the district court can "monitor the [re-examination]
proceedings . . . to ascertain whether [the court's] construction
of any of the claims has been impacted."). The prosecution history
provides evidence of how the PTO and the inventor understood the
patent and whether the inventor has limited the claimed invention
during prosecution. Phillips, 415 F.3d at 1317.

"The prosecution history limits the interpretation of claim
terms so as to exclude any interpretation that was disclaimed during
prosecution." Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d
1570, 1576 (Fed. Cir. 1995). In these instances, a narrower
interpretation of claim scope can be imposed if a patentee "clearly
and unambiguously" disclaims claim scope during prosecution. Voda
v. Cordis Corp., 536 F.3d 1311, 1321 (Fed. Cir. 2008).

This doctrine "promotes the public notice function of the
intrinsic evidence and protects the public's reliance on definitive
statements made during prosecution." Elbex Video, Ltd. v.
Sensormatic Elec. Corp., 508 F.3d 1366, 1371 (Fed. Cir. 2007). The
public notice function trumps any attempts by a patentee to broaden
claims to recapture scope that was given to the public. See, e.g.,
SanDisk Corp. v. Memorex Prod., Inc., 415 F.3d 1278, 1286 (Fed. Cir.
2005)(noting that the doctrine "precludes patentees from recapturing
through claim interpretation specific meanings disclaimed during

7

prosecution.").

This is especially true when these disclaimers obtain patents over the prior art that initially invalidated them. See, e.g., Bell Atlantic Network Servs., Inc. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1273-74 (Fed. Cir. 2001). Patent monopolies may not be secured over information that was already known or obvious to the public. See, e.g., 35 U.S.C. §§ 102-103; KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 427-28 (2007). "Accordingly, where the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution history disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." Chimie, 402 F.3d at 1384 (quoting Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003)).

The proper construction of the term "location" facility is a component of a locator server computer that itself: 1) creates communication sessions between a remote computer and personal computer; 2) receives a request for communication with the personal computer from the remote computer; 3) locates the personal computer (and "determines the then location of the personal computer"); and 4) creates a communication channel between a remote computer and the personal computer.

This construction is consistent with the claim language, the specification, and the prosecution history.

8

The claims specify that the location facility itself performs multiple functions, including creating "communication sessions", "receiving the request for communication with the personal computer from the remote computer", "locating the personal computer", "determining the then current location of the personal computer", "and creating a communication channel between the remote computer and the personal computer".

This construction is consistent with the specification. For example, Figures 1-3 of the patent each show the "Location Facility" (numbered "6") as a single box, and Column 1, lines 50-53 say that the Location Facility is "for providing remote access to said Private Server 14 . . . ."

During the re-examination of the '479 Patent, O1 clearly and ambiguously *disclaimed* having more than one device perform the functions of the location facility. "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution history disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." Chimie, 402 F.3d at 1384.

Also, this construction is consistent with the prosecution history. It is exactly and narrowly what O1 told the PTO the location facility was, in an effort to avoid rejection based on the prior art:

> • "[O]ne of ordinary skill in the art would understand it [the claim language] to require

9

that the location facility, itself, creates the communication channel."

• "One of ordinary skill in the art would not view this language . . . to be satisfied by an alleged location facility that is simply used by some other component that creates the communication channel."

• "One of ordinary skill in the art would not view the 'create' requirements of the '479 Patent claims to be satisfied if the location facility is only 'used' by some other component that itself creates communication channel . . . ."

• "One of ordinary skill in the art would also not view these 'create' requirements to be satisfied if the location facility only 'enables' or 'facilitates' some other component that creates the communication channel . . . ."

• "Assisting some other component that creates the communication channel is not the same as creating the communication channel—the '479 Patent claims require the location facility to do the latter."

Summary judgment should enter when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In a patent infringement suit, summary judgment of noninfringement should be granted where, under the proper claim construction, the accused products do not meet every limitation of the patent claims. See, e.g., Board of Regents of the Univ. of Texas Sys. v. BENQ America Corp., 533 F.3d 1362, 1373 (Fed. Cir. 2008) ("We conclude that the district court correctly granted summary judgment of non-infringement because we perceive no

10

substantive dispute regarding the relevant issues of fact.");

Flex-Rest, LLC v. Steelcase, Inc., 455 F.3d 1351, 1361-62 (Fed. Cir. 2006) ("Because there is no dispute that the accused devices do not meet the 'sidewall' limitation under this construction, summary judgment of non-infringement of the '231 patent was appropriate.");

Karsten Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1380-81 (Fed. Cir. 2001) ("In the absence of dispute as to the structure of the Cleveland clubs, summary judgment that there was not literal infringement was properly granted, for all of the claimed limitations are not embodied on the Cleveland clubs.").

The LogMeIn products that 01 has accused of infringing the '479 Patent are LogMeIn Free, LogMeIn Pro, LogMeIn Ignition, Join.Me, and IT Reach ("accused LogMeIn products").

The accused LogMeIn products do not have any "location facility" that locates a personal computer and "itself" creates a communication channel between a remote computer and the personal computer.

01 made a clear and unambiguous disclaimer at the PTO during the re-examination of the patent-in-suit. Specifically, in order to save its '479 Patent from a determination of invalidity based on the prior art, 01 made categorical representations to the PTO regarding what the '479 Patent claims do not cover.

01 represented to the PTO that all asserted claims of the '479

11

patent require a "locator server computer" with a "location facility" that, "itself," performs multiple functions. Specifically, 01 represented that the location facility—not "some other component"—must "create[]" "communication sessions" by (1) "recei[ving] the request for communication with the personal computer from the remote computer," (2) "locating the personal computer," and (3) "creating a communication channel between the remote computer and personal computer"):

> One of ordinary skill in the art would not view this language, and particular its repeated use of forms of "create," to be satisfied by an alleged location facility that is simply used by some other component that creates the communication channel - rather, one of ordinary skill in the art would understand it to require that the location facility, itself, create the communication channel.

> One of ordinary skill in the art would not view the "create" requirements of the '479 Patent claims to be satisfied if the location facility is only "used" by some other component that itself creates the communication channel …. One of ordinary skill in the art would also not view these "create" requirements to be satisfied if the location facility only "enables" or "facilitates" some other component that creates the communication channel …. These words ("uses", "enables", "facilitates") would have different meanings to one of ordinary skill in the art than "create". Assisting some other component that creates the communication channel is not the same as creating the communication channel - the '479 Patent claims require the location facility to do the latter.

In briefing the Motion for Preliminary Injunction, 01 admitted that LogMeIn's products function in precisely the manner that 01 told the PTO the '479 Patent does not cover—that is, by distributing the

functions of the "location facility" among different devices: "it
is apparent that in LogMeIn's system the functionality of the locator
server computer are distributed among two or more different devices
. . . ." As a matter of undisputed fact, there is no device in LogMeIn's
accused products that itself creates communication sessions by
receiving the request for communication with the personal computer
from the remote computer, locating the personal computer, and   also
itself creating the communication channel, as 01's patent claims all
require.

The LogMeIn system does not contain any component that itself
performs all the four functions required of the location facility
under the Court's construction of the term. LogMeIn's remote access
system uses separate and distinct components—having different IP
addresses, different software code, and different physical locations
in multiple data centers across two continents—to allow its users
to remotely access host computers. LogMeIn maintains roughly eighty
Web Servers, thirty Database Servers, and ninety Gateway Servers in
four data centers located in Virginia, Illinois, California, and
England. A single remote access session using LogMeIn's system may,
and often does, utilize servers from multiple, geographically
distinct data centers. For example, a user may contact a Web Server
in London, which will contact a Database Server in Ashburn, Virginia,

13

and then may be directed to a Gateway Server in Chicago. In addition, two of LogMeIn's four data centers—located in England and Illinois—are "satellite" data centers. They contain only Web Servers and Gateway Servers and do not contain Database Servers. Therefore, by necessity, the England and Illinois "satellite" data centers must utilize a Database Server in either Virginia or California to perform remote access.

Each of the individual Web Servers and Gateway Servers has its unique location on the Internet defined by a separate and different IP address. The Database Servers do not have a location on the Internet at all, as their IP addresses are private and non-routable, and they cannot be contacted directly.

The LogMeIn Web Servers, Gateway Servers, and Database Servers each run on separate and different software. The Gateway Server is a wholly proprietary application written in the C++ language, the Database Server is built using a commercial database platform using T/SQL, and the Web Server uses primarily JavaScript and C# in Active Server Pages.

The LogMeIn Web Servers, Gateway Servers, and Database Servers each perform separate and different functions that are not replicated by any of the other servers. The use of independent and distinct server types is necessary for scaling LogMeIn's system to support

14

millions of users.

The LogMeIn Web Servers are the component in the LogMeIn system that authenticates users and provides front end web pages for managing user data. The LogMeIn Web Server does not (1) create communication sessions between a remote computer and a personal computer; (2) locate the personal computer and determine the then current location of the personal computer; and (3) create a communication channel between a remote computer and the personal computer. The LogMeIn Web Server cannot be the "location facility" because it does not itself perform three of the four required functions of the "location facility" under this Court's construction of that term.

LogMeIn's Database Servers are the component in the LogMeIn system that executes logic for identifying and managing the hosts and clients involved in the remote access services provided by LogMeIn. The LogMeIn Database Server does not (1) create communication sessions between a remote computer and a personal computer; (2) receive a request for communication with the person or computer from the remote computer; or (3) create a communication channel between a remote computer and the personal computer. The LogMeIn Database Server cannot be the "location facility," as that term has been construed by the Court, because it does not itself

15

perform three of the four functions of that component.

The LogMeIn Gateway Servers are the component in the LogMeIn system that maintains static connections to LogMeIn hosts and forwards traffic between the host and the client. The Gateway Server does not (1) receive a request for communication with the person or computer from the remote computer; or (2) locate the personal computer and determine the then current location of the personal computer. The LogMeIn Gateway Server cannot be the "location facility" because it does not itself perform two of the four functions of that component.

Based upon the undisputed evidence and 01's own admission in its Motion for Preliminary Injunction, nothing in LogMeIn's accused products is a location facility as required by all of 01's asserted claims: a device that itself receives a request for communication with a personal computer, locates the personal computer, and creates a communication channel between a remote computer and a personal computer.

Moreover, as a matter of law, 01 is not entitled to an infringement claim under the "doctrine of equivalents." Although 01 has not properly articulated such a claim in this case, it also is estopped from doing so by its arguments to the PTO in re-examination. 01 cannot now assert that a locator server that merely assists some

16

other component to create a communication channel is "equivalent" to a location facility that "itself" does so, given 01's categorical representations to the PTO that the two are different, in order to distinguish the prior art. See, e.g., Felix v. American Honda Motor Co., 562 F.3d 1167, 1185 n.6 (Fed. Cir. 2009) ("[W]e conclude that the district court properly granted summary judgment of no infringement under the doctrine of equivalents as a result of prosecution history estoppel . . . ."); PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1367 (Fed. Cir. 2007) (arguments made during prosecution bar patentees from asserting infringement by equivalents); SciMed Life Sys. v. Advanced Cardiovascular Sys., 242 F.3d 1337, 1347 (Fed. Cir. 2001) ("[I]f a patent states that the claimed device must be 'nonmetallic,' the patentee cannot assert the patent against a metallic device on the ground that a metallic device is equivalent to a non-metallic device.").

LogMeIn cannot infringe the '479 Patent as a matter of law, and summary judgment should be entered at this time. See, e.g., Forest Labs, Inc. v. Abbott Labs., 239 F.3d 1305, 1310 (Fed. Cir. 2001) (finding no infringement absent "proof that the accused product meets each and every claim limitation").

For the foregoing reasons, Defendant LogMeIn Inc.'s Motion for Claim Construction and Summary Judgment of Noninfringement should

17

be granted. The Plaintiff's Motion for Summary Judgment on
Defendant's Affirmative Defenses should be denied as moot.

An appropriate Order shall issue.


_____/s/_____
Claude M. Hilton
United States District Judge


Alexandria, Virginia
May ⧸⧸ , 2011

18