IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| 01 COMMUNIQUE LABORATORY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 10-cv-01007-CMH-TRJ |
| ) | |
| LOGMEIN, INC. ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION
FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT
IN LIGHT OF THE FEDERAL CIRCUIT'S *THERASENSE* DECISION**

**PRELIMINARY STATEMENT**

On May 25, 2011, in its strongly worded *Therasense* decision, the Court of Appeals for the Federal Circuit sent clear instructions that the days of charging opponents with inequitable conduct as a "common litigation tactic" in "almost every major patent case" are over. *Therasense, Inc.* v. *Becton, Dickenson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc) ("*Therasense*").

Referring to such claims as a "plague," "atomic bomb," and "hangman's noose," and recognizing that they are designed to "paint the patentee as a bad actor" and assert "charges against reputable lawyers on the slenderest grounds," the court dismantled its earlier standards for alleging and proving inequitable conduct and, in its place, established much more rigorous standards for alleging and proving those claims.

Under the former standard, a defendant could base inequitable conduct claims simply on the nondisclosure of a "prior art" reference to the PTO, and by showing that the patentee "knew

or *should have known*" of the reference's "materiality." That standard was expressly stricken in favor of standards for scienter and materiality that give the courts tighter control over meritless claims asserted purely for litigation leverage. Now, to sustain a claim of inequitable conduct, the defendant must allege and prove that the patentee "knew of the reference, *knew that it was material*, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290.

In addition to requiring proof that the patentee "knew" that the reference was material, rather than just that he "knew or should have known," the court also raised and strictly defined the standards for proving "materiality" in this context. Gone is the prior "broad" "reasonable examiner" view of materiality ("a reference is material if 'there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent'"). *Id.* at 1288 (citation omitted). In its place, the Federal Circuit substituted the much higher "but for" standard of materiality: "[P]rior art is but for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291.

LMI has neither alleged nor can prove that 01 "specifically intended to deceive the PTO" under those new, more restrictive standards. Indeed, the evidence in this case points directly to the opposite conclusion. Both parties accused of inequitable conduct testified without equivocation at their depositions that they believed the reference is *not* material. There is no evidence whatsoever to support the contrary conclusion that they not only believed U.S. Patent No. 7,130,888 ("'888 patent") to be material, they in fact *knew* it to be so. There is only the self-serving conjecture of LMI's expert that, in his opinion, the reference is invalidating prior art. Similarly, there is no evidence that the PTO would not have issued the patent if it became aware of the '888 patent.

Thus, there is neither sufficient allegation nor the required clear and convincing evidence that 01 "knew" that the '888 reference was material or that "*the PTO would not have allowed [the '479 patent] had it been aware of the undisclosed ['888 patent]*." LMI's allegations of inequitable conduct by 01 should be stricken under the standards set forth in *Therasense* and *Exergen*, and 01 should be granted summary judgment.

## PROCEDURAL STATUS

On March 17, 2011, 01 filed a motion for summary judgment on LMI's affirmative defenses of inequitable conduct, laches and equitable estoppel. (ECF 106). In its May 5, 2011 Memorandum Opinion, this Court denied that motion as moot and granted summary judgment of non-infringement in favor of LMI. (ECF 137). Twenty days later, on May 25, 2011, the United States Court of Appeals for the Federal Circuit ("the Federal Circuit") issued its landmark *Therasense* decision. The Federal Circuit subsequently vacated and remanded this Court's grant of summary judgment on July 31, 2012. *01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292 (Fed. Cir. 2012). As a result of the Federal Circuit's vacatur and remand and under the new standards set out in *Therasense*, the present renewed motion for summary judgment is properly before this Court. *Therasense* compels summary judgment in favor of 01 on LMI's inequitable conduct claims.

I.  **LEGAL STANDARDS**

    A.  **Summary Judgment Standard**

A grant of summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56. It is well settled that "the statutory purposes of the grant of summary judgment under Fed. R. Civ. P. 56 are without question intended to be effectuated in patent litigation as in any other type of suit and in accordance with the same standard." *Union Carbide Corp. v. Am.*

3

*Can Co.*, 724 F.2d 1567, 1571 (Fed. Cir. 1984) (footnote omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

Once the party moving for summary judgment has demonstrated the absence of a genuine issue of material fact, the nonmoving party must come forward with concrete evidence in the form of "specific facts showing that there is a genuine issue for trial." *Long v. First Union Corp.*, 894 F. Supp. 933 (E.D. Va. 1995), *aff'd*, 86 F. 3d. 1151 (4th Cir. 1966).

Where a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. Instead the nonmoving party must respond by affidavits or otherwise and present specific facts showing there is a genuine issue of disputed fact for trial. *Garrett v. Gilmore*, 926 F. Supp. 554 (W.D. Va.), *aff'd*, 103 F.3d 117 (4th Cir. 1996).

Mere conclusory statements or conjecture will not suffice. Rather the party opposing the motion must present evidence to refute the motion for summary judgment. If the nonmoving party fails to meet the burden, summary judgment should be granted. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

  B. **Inequitable Conduct**

The defense of "inequitable conduct" to a claim of patent infringement is an equitable defense, arising from Supreme Court precedent "that applied the doctrine of unclean hands to dismiss patent cases involving egregious misconduct." *Therasense*, 649 F.3d at 1285 (citations omitted). The defense requires "a finding of both intent to deceive and materiality." *Id.* at 1287 (citation omitted). As the Federal Circuit recognized, however, as the defense has developed, it

"has become a significant litigation strategy," designed to needlessly "expand[] discovery," increase expense, and unnecessarily complicate the proceedings *Id.* at 1288.  "[I]t is no wonder" remarked the Court, "that charging inequitable conduct has become a common litigation tactic" utilized in an estimated eighty percent of patent infringement cases.  *See id.* at 1289 (citations omitted).  The Court harkened back to its earlier rulings describing the defense as "an absolute plague," noting that "[r]eputable lawyers seem compelled to make the charge [of inequitable conduct] against other reputable lawyers on the slenderest grounds."  *Id.* at 1289 (citing *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) (cataloguing the harm done to patent litigation and "the bar itself" by misuse of the defense)).  As a consequence of these ills, *Therasense* put an end to the days when "the mere nondisclosure of information to the PTO" was sufficient to allege and prove inequitable conduct, which had the effect of requiring applicants to "disclose too much prior art for the PTO to meaningfully consider."  *Id.* at 1287-89.

As a result, the Court announced that it "now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public," clearing the road to summary judgment for unmeritorious claims.  *Id.* at 1290.

Under the new, tightened *Therasense* standards, LMI must prove by <u>clear and convincing</u> evidence <u>both</u>:  (1) that "the patentee acted with the *specific intent* to deceive the [Patent Office]," meaning that the patentee "knew that [the reference] was material, and made a deliberate decision to withhold it," and (2) that the non-disclosed reference was "but-for material," meaning that, but for the failure to disclose the reference, the Patent Office would not have confirmed the validity of the patent.  *Therasense*, 649 F.3d at 1290-92 (emphasis added).

5

A failure of proof on <u>any</u> element precludes a finding of inequitable conduct: "Proving that the applicant knew of a reference, *should have known* of its materiality, and decided not to submit it to the Patent Office *does not prove* specific intent to deceive." *Id.* at 1290 (emphasis added) (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be the '*single most reasonable inference* able to be drawn from the evidence.'" *Id.* (emphasis added) (citation omitted). Moreover, "the evidence 'must be sufficient to *require* a finding of deceitful intent in light of all the circumstances.'" *Id.* (emphasis in original) (citation omitted).

Thus, under *Therasense*, courts can no longer infer intent to deceive from non-disclosure of a reference solely because that reference was known and material. *See id.* In addition, the Court re-defined "materiality" as a "but-for" standard, declaring the test to be that "prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291.

Finally, "the patentee need not offer any good faith explanation for his conduct unless the accused infringer . . . first prove[s] a threshold level of intent to deceive by clear and convincing evidence." *Id.* (citing *Star Scientific*, 537 F.3d at 1368).

LMI has not, and cannot, meet this burden.

## II.   FACTUAL BACKGROUND

The facts surrounding a claim of inequitable conduct must be pled in detail with particularity. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009). In its First Amended Answer, LMI asserted the affirmative defense of inequitable conduct based upon the failure of Andrew Cheung and Kenneth J. Sheehan to submit a specific reference, the '888 patent, to the Patent Office during prosecution of the *Inter Partes* Reexamination of the patent-

6

in-suit, U.S. Patent No. 6,928,479 ("the '479 patent") initiated by a different party altogether, who is not involved in this litigation. As alleged in LogMeIn's Answer, Andrew Cheung is an inventor of the '479 patent and the CEO of 01. Mr. Sheehan is an attorney for 01 who prosecuted the *Inter Partes* Reexamination of the '479 patent.

The only apparent basis for LMI's accusations is that 01 had been sued previously, by an unrelated party, for infringement of the '888 patent, and from that single fact alone, LMI deduced that the reference was both material and that 01 knew it to be so.

However, in his deposition on January 26, 2011, Mr. Cheung was questioned regarding the '888 patent and provided the following testimony evidencing his belief that the '888 patent is substantially different from, and immaterial to, the inventions covered by the '479 patent:

> Q: So how is the remote access system of the '888 patent different from your invention?
>
> A: It's just completely two different things. . . . What it solve[s] is different. It doesn't even work for [a] dynamic address and doesn't work for [a] dynamic IP address that is unaddressable, you know, from the -- the -- the internet. So pointblank it's two different things.

Cheung Dep. Tr. at 108:2-14, Jan. 26, 2011.

In a subsequent deposition on February 10, 2011, Mr. Cheung testified that he did not even consider submitting the '888 patent during the reexamination of the '479 patent because it was "very, very different" from the invention of the '479 patent:

> Q: During the reexamination of the '479 patent requested by Citrix, you never made any decision concerning whether or not you should disclose the '888 patent, correct?
>
> A: No. Never -- never even come up in my mind.
>
> Q: And so why didn't you disclose the '888 patent?
>
> A: Didn't even come in my mind. It [was considered] earlier [in] 2007 when I was, you know, evaluating that lawsuit by

7

>Accolade.  I ha[d] already concluded that it was very, very different.  It was something else.

Cheung Dep. Tr. at 351:2-13, Feb. 10, 2011.

Consistent with Mr. Cheung's testimony, Mr. Sheehan testified that he too did not even think about the '888 patent during the reexamination of the '479 patent because it lacked at least two fundamental features critical to and found in each of the claims and thus was not material to the '479 patent:

>Q: Did you make a specific decision during the reexamination not to disclose the '888 patent?
>
>A: I don't recall making a specific decision on that.
>
>Q: Did you make -- did you make any specific conclusions (sic) the '888 patent during the reexamination?
>
>A: I don't recall making -- I don't recall ever really thinking about the '888 patent because it's not really something to -- you know, that warranted thinking about during the reexamination.

Sheehan Dep. Tr. at 57:1-10, Feb. 10, 2011.

>Q: What did you conclude about the -- the '888 patent in relation to the '479 patent?
>
>A: I concluded that it wasn't relevant to the '479 patent.
>
>Q: Why not?
>
>A: Because there were . . . a number of key features of the claims of the '479 patent that are not in the '888 patent.
>
>Q: What features?
>
>A: The . . . two features that I remember, because they were very significant.  There may have been others at the time, because I was looking at it in detail.  But the two key features were the -- you know, the dynamic IP addresses and how to deal with dynamic IP addresses and then how to deal with computers that are -- have a publicly unaddressable IP address.

8

Sheehan Dep. Tr. at 31:17-32:17, Feb. 10, 2011.

### III. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

A. In 2007 Andrew Cheung considered the '888 patent and testified that it lacked certain features found in the claims of the '479 patent and thus was not material to the validity of the '479 patent. Cheung Dep. Tr. at 351:2-13, Feb. 10, 2011.

B. Andrew Cheung did not disclose the '888 patent to the PTO during the re-examination of the '479 patent. Cheung Dep. Tr. at 351:2-13, Feb. 10, 2011.

C. In 2007 Kenneth J. Sheehan considered the '888 patent and testified that it lacked certain features found in the claims of the '479 patent and thus was not material to the validity of the '479 patent. Sheehan Dep. Tr. at 31:17-32:5, Feb. 10, 2011.

D. Kenneth Sheehan did not disclose the '888 patent to the PTO during the re-examination of the '479 patent. Sheehan Dep. Tr. at 57:1-10, Feb. 10, 2011.

E. There is no other evidence relevant to prove whether or not Messrs. Cheung or Sheehan "knew" the '888 patent to be material to the allowability of the '479 patent.

F. There is no evidence to suggest that the PTO would not have issued the '479 patent had been aware of the '888 patent.

### IV. ARGUMENT

**A. There Is No Evidence Of Materiality Of The '888 Reference Or Of An Intent To Deceive the PTO**

The foregoing testimony by Messrs. Cheung and Sheehan is the full extent of the evidence in this matter on the question of alleged intent to deceive the Patent Office and is uncontroverted. There are no documents to which LMI can point to suggest a circumstantial case of deceptive intent. There is no other deposition testimony from which LMI could fashion an argument of deceptive intent. There is no smoking gun.

9

> And even though circumstantial evidence can be used to prove deceptive intent, to meet the clear and convincing evidence standard, the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence." Indeed, the evidence "must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances." Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.

*Therasense*, 649 F.3d, at 1290-91 (citations omitted).

In this case, there is no foundation whatsoever to establish that an intent to deceive the PTO by Messrs. Cheung and Sheehan is "the single most reasonable inference able to be drawn from the evidence." That Messrs. Cheung and Sheehan believed the reference *not* to be material, is at least as likely an inference from the evidence. In fact, based on the uncontroverted testimony of Messrs. Cheung and Sheehan that they did not believe the reference to be material, and the absence of any contrary evidence of intent, the inference that they did not believe the reference to be material, and so could not have known it to be material, is the only reasonable inference to be drawn from the available evidence. Any conclusion that they "knew" the '888 reference to be material to the allowability of the '479 patent, on this record, is pure speculation.

Indeed, the single most compelling conclusion on this record demonstrates that Mr. Cheung and Mr. Sheehan believed the '888 patent to be immaterial to the inventions claimed in the '479 patent. The record contains no evidence pointing to a contrary conclusion, or to any suggestion of deliberate action to withhold the '888 patent in order to deceive the PTO. As the Federal Circuit has instructed, "[w]henever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference." *Id.* at 1291 (citing *Scanner Tech.s v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008)). Because the conclusions that a reasonable examiner would have allowed the patent claims even if he were

10

aware of the '888 reference and that 01 did not know the patent to be material are as reasonable as any inference to the contrary, *Therasense* compels the entry of summary judgment for 01. The record demonstrates no genuine dispute to the pertinent material facts.

### B. Cases after *Therasense* Have Rejected Inequitable Conduct Claims On Factual Grounds Such As These

In cases since *Therasense* in which the courts considered whether there was adequate evidence to allow claims of inequitable conduct to stand, nearly every one of them said "no." In the very few that did not, there was direct evidence of materiality, resulting from a trial verdict of invalidity, or direct evidence of scienter, such as from evidence of false declarations submitted to the PTO. Neither is present in this case. A brief summary of those cases follows:

- In *Pfizer Inc. v. Teva Pharm. USA, Inc.*, Judge Smith found no inequitable conduct, declaring that defendant's claim of inequitable conduct was "objectively baseless" after *Therasense*, and that defendant "could not have reasonably believed this claim would succeed." 820 F.Supp.2d 751, 757 (E.D. Va. 2011). As for defendant's arguments "for materiality and intent," the Court found that "there is utterly no evidence as to either of these elements." *Id.* Further, the Court awarded attorneys fees for defendant's "continuing to pursue its inequitable conduct claim after Therasense." *Id.* at 761.

- In *MeadWestvaco Corp., et al., v. Rexam PLC*, Judge Lee granted summary judgment of no inequitable conduct, stating that "Plaintiffs' decision not to disclose . . . two items does not prove deceptive intent. '[N]on-disclosure, by itself, cannot satisfy the deceptive intent element.' . . . the Court rejects Defendants' argument that the single most reasonable inference from nondisclosure is deception." 809 F.Supp.2d 463, 476-77 (E.D. Va. 2011) (citation omitted).

- In *In re Rosuvastatin Calcium Patent Lit.*, the Federal Circuit refused to find inequitable conduct because, based upon the record, the inference that plaintiff was not trying to mislead the PTO was "equally plausible." No. 2010-1460 et al., 2012 WL 6217356, *7 (Fed. Cir. Dec. 14, 2012).

- In *Outside the Box Innovations, LLC v. Shower Caddy, Inc.*, the Federal Circuit found that "there was no "clear and convincing evidence of intent to deceive the examiner, . . . nor was there evidence on which to base an inference of deceptive intent." 695 F.3d 1285, 1291 (Fed. Cir. 2012).

- In *1st Media, LLC v. Elec. Arts, Inc.*, the Federal Circuit noted that the record showed that there was no direct evidence of intent to deceive the PTO. 694 F.3d 1367, 1373

(Fed. Cir. 2012). The Court declared that even "knowledge of a reference's materiality . . . cannot by itself prove, let alone clearly and convincingly prove, that any subsequent nondisclosure was based on a deliberate decision." *Id.* at 1375.

- In *BASF Corp. v. Aristo Inc.*, the court asserted that even if "courts may infer intent from indirect and circumstantial evidence, . . . to meet the clear and convincing evidence standard the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." No. 2:07-CV-222-PPS, 2012 WL 1933700, *18 (N.D. Ind. May 29, 2012) (citations omitted)

- In *Hospira Inc. v. Sandoz Inc.*, the court found that even though the plaintiff "made a deliberate decision to withhold the [] reference from the PTO, . . . the court cannot conclude that he did so knowing it was material . . . . The court concludes, therefore, that [the plaintiff] had a genuine belief that [the reference] did not need to be disclosed to the PTO" and that "specific intent to deceive is not the single most reasonable inference to be drawn from [the plaintiff's] actions." No. 09-4591, 2012 WL 1587688, *33 (D.N.J. May 4, 2012)

- In *MFormation Techs. Inc. v. Research in Motion*, the court stated that the evidence on summary judgment "permits the reasonable inference that [the plaintiff] did not consider [the references in question] to be material. . . . Thus, the defendants have not shown that the evidence 'requires' a finding of deceitful intent, which means that intent to deceive cannot be found." 830 F.Supp.2d 815, 830-31 (N.D. Cal. 2011) (citation omitted).

- In *Joy MM Del. Inc. v. Cincinnati Mine Mach. Co.*, the court asserted that "there can be no intent to deceive when the undisputed facts are that the inventor and the patent attorney reviewed the piece of prior art, . . . considered it to be no more relevant to the claims that they would submit to the PTO for examination than any of the other pieces of prior art they had already reviewed, and decided not to disclose it on that basis. 834 F.Supp.2d 360, 384 (W.D. Pa. 2011). In this case, the court found that the record [did] not compel . . . as the only reasonable conclusion, that [plaintiff] had a specific intent to deceive the PTO." Further, the court declared that "[g]eneral similarities between the claimed invention and the [missing reference], or common benefits provided by them, are insufficient to prove that had the PTO known about [the missing reference], it would not have allowed a claim . . . ." *Id.* at 385. The missing reference lacked "many of the limitations claimed in the [asserted] patent." *Id.*

Only two discovered cases involved courts considering and allowing inequitable conduct claims based on the new *Therasense* standard and in both cases the facts are clearly distinguishable from those asserted by LMI to support their claim. First, in the remanded *Therasense* case, the patent at issue was held unenforceable due to inequitable conduct based on clear and convincing evidence that the specific intent to deceive the PTO by withholding the

12

prior art at issue was "the single most reasonable inference." The court made this determination because the withheld prior art disclosed the applicant's contrary representations to the European Patent Office regarding the European counterpart to the U.S. patent at issue on the *very same* issue raised by the examiner, the patent would not have been allowed had the prior art been submitted, and the prosecuting attorney and expert were aware of the prior art, which was conceded, and made a conscious decision not to disclose them. *Therasense, Inc. v. Becton, Dickinson and Co.*, 864 F Supp. 2d 856, 861-68 (N.D. Cal. 2012).

The second example of a court permitting a claim of inequitable conduct to proceed even in light of the new *Therasense* standard was *Aventis*, in which the court concluded that the patent owner submitted a deliberately false and misleading declaration to the PTO. *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012). Neither these facts, nor those in the remanded *Therasense* case, are present here.

## V.     TRIAL MANAGEMENT CONSIDERATIONS

By granting summary judgment of no inequitable conduct, this Court will not only be correctly following the rule of *Therasense*, it will also be avoiding a number of potential impediments as to the efficient trial of this matter. The jury will not be subjected to testimony with regard to complicated matters of reexamination procedure; testimony will not be required from 01's patent prosecution counsel, nor from experts on inequitable conduct identified by both sides; and the length of the trial will be substantially shortened.

Moreover, the specific ills the Federal Circuit decried in *Therasense*: using inequitable conduct as "a significant litigation strategy"; "cast[ing] a dark cloud over the patent's validity" and "paint[ing] the patentee as a bad actor"; focusing the jury's attention on thin allegations of "moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney"; making charges against "other reputable lawyers on the slenderest grounds"; and

"casting the shadow of the hangman's noose over the patent and the plaintiff" all would be avoided.

For these reasons, and others discussed in *Therasense*, inequitable conduct claims, as equitable and not legal in nature, are inappropriate for submission to a jury during the case in chief. If not dismissed, *Therasense* suggests that the proper way to conduct the trial of an inequitable conduct claim that survives summary judgment is to withhold any evidence of inequitable conduct from the jury unless and until the defendant prevails on its defenses of invalidity.

As the *Therasense* court held, "the patentee need not offer any good faith explanation unless the accused infringer first . . . prove[s] a threshold level of intent to deceive (which includes proving that the patentee knew the reference to be material) by clear and convincing evidence." *Therasense*, 649 F.3d at 1291. Thus, from the point of view of trial management, 01 should not be required to offer any evidence on inequitable conduct at all unless and until LMI satisfies its threshold showing of intent to deceive and materiality by clear and convincing evidence. The only possible evidence that LMI could offer to show that the '888 reference was material is a finding by the court or the jury that the '888 reference invalidates at least one claim of the '479 patent. And that can only happen after the jury returns its verdict on that issue. If the jury does not return such a verdict, the inequitable conduct claims must fail.

As the Court instructed with respect to the new but-for test for materiality, "the district court should determine whether the PTO would not have granted the patent but for [the patentee's] failure to disclose the [disputed reference]." *Id.* at 1296. The only meaningful way for the court to do that is to determine whether the '888 patent, either alone or in combination with other references, would invalidate at least one claim of the '479 patent. If it does not

invalidate any claim of the '479 patent, then the court cannot reasonably conclude that the examiner would not have allowed the patent had he been aware of the '888 patent.

## VI. CONCLUSION

For at least the foregoing reasons, 01 respectfully requests that summary judgment be granted, finding no inequitable conduct as alleged by LMI.

Date:  December 27, 2012                     /s/ *A. Neal Seth*

BAKER & HOSTETLER LLP

John P. Corrado (VSB 20247)
Marc A. Antonetti (pro hac vice)
A. Neal Seth (VSB 47394)
Katherine L. McKnight (VSB 81482)

Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5304
(202) 861-1500
(202) 861-1783 (facsimile)
jcorrado@bakerlaw.com
mantonetti@bakerlaw.com
nseth@bakerlaw.com
kmcknight@bakerlaw.com

Thomas H. Shunk (pro hac vice)

PNC Building, Suite 3200
1900 E. 9th Street
Cleveland, Ohio  44114
(216) 861-7592
(216) 696-0740 (facsimile)
tshunk@bakerlaw.com

*Counsel for Plaintiff,*
*01 Communique Laboratory, Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Memorandum In Support Of Plaintiff's Renewed Motion For Summary Judgment Of No Inequitable Conduct In Light Of The Federal Circuit's *Therasense* Decision has been served by hand, on December 27, 2012, to the following counsel of record:

Philip R. Seybold

WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363
randy.seybold@wilmerhale.com

Charles B. Molster III

WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006-3817
Tel: (202) 282-5000
Fax: (202) 282-5100
cmolster@winston.com

*Counsel for LogMeIn, Inc.*

> */s/ A. Neal Seth*
> *Counsel for Plaintiff*