PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| 01 COMMUNIQUE LABORATORY, INC., | ) | |
| Plaintiff, | ) | |
| vs. | ) | Civil Action No. 1:10-cv-01007-CMH-TRJ |
| LOGMEIN, INC., | ) | |
| Defendant. | ) | |

**LOGMEIN, INC.'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR
SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT IN LIGHT OF THE
FEDERAL CIRCUIT'S *THERASENSE* DECISION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS..............................................................................................................i

I.     INTRODUCTION .........................................................................................................1

II.    STATEMENT OF GENUINE ISSUES OF MATERIAL FACT.......................................4
      A.    01's Representatives Withheld a Highly Material Prior Art Reference from the
            PTO During the Reexamination of the '479 Patent .................................................4
      B.    Procedural History ....................................................................................................7

III.   LEGAL STANDARDS ..................................................................................................8
      A.    Summary Judgment Standard ....................................................................................8
      B.    Inequitable Conduct ..................................................................................................9

IV.   ARGUMENT ...............................................................................................................11
      A.    *Therasense* Does Not Foreclose LogMeIn's Inequitable Conduct Defense; 01 Still
            Committed Inequitable Conduct Under The Revised Standard...............................11
            1.    LogMeIn's Inequitable Conduct Defense Satisfies the "But For"
                   Materiality Standard of *Therasense* ........................................................11
            2.    01's Inequitable Conduct Satisfies *Therasense's* Intent to Deceive Prong13
            3.    01's Cited Post-*Therasense* Case Law is Not Analogous........................14
      B.    There is No Reason to Bifurcate Trial .....................................................................15

V.    STATEMENT OF DISPUTED MATERIAL FACTS ....................................................16

VI.   CONCLUSION............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abbott Point of Care, Inc. v. Epocal, Inc.*,
    868 F. Supp. 2d 1310 (N.D. Ala. 2012)......................................................15, 16

*Accolade Sys. LLC v. 01 Communique Laboratory, Inc.*,
    No. 6:07-cv-047 (E.D. Tex.)..............................................................................4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................9

*Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*,
    605 F.3d 1305 (Fed. Cir. 2010).........................................................................9

*Aventis Pharm. v. Hospira, Inc.*,
    675 F.3d 1324 (Fed. Cir. 2012)................................................................1, 12, 15

*Avocent Redmond Corp. v. Raritan Americas, Inc.*,
    Case No. 10-cv-6100, 2012 WL 3114855 (S.D.N.Y. July 31, 2012)....................15

*Bristol-Myers Squibb Co. v. Teva Pharma. USA, Inc.*,
    No. 10-805-RGA, 2012 WL 2951965 (D. Del. July 19, 2012)............................14

*Cargill, Inc. v. Canbra Foods, Ltd.*,
    476 F.3d 1359 (Fed. Cir. 2007)...............................................................9, 10, 13

*Kathrein-Werke KG v. Radiacion y Microondas S.A.*,
    Case No. 07-cv-2921, 2011 WL 4460393 (N.D. Ill. Sept. 26, 2011)....................15

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*,
    863 F.2d 867 (Fed. Cir. 1988)..........................................................................10

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*,
    381 F.3d 1142 (Fed. Cir. 2004).........................................................................12

*Larson Mfg. Co. of South Dakota, Inc. v. Aluminart Prods. Ltd.*,
    559 F.3d 1317 (Fed. Cir. 2009).....................................................................10, 14

*Marlow Indus., Inc. v. Igloo Prods. Corp.*,
    65 Fed. App'x 313 (Fed. Cir. 2003)...................................................................10

*Medtronic Xomed, Inc. v. Gyrus ENT, LLC*,
    440 F.Supp.2d 1333 (M.D. Fla. 2006)................................................................15

*Nilssen v. Osram Sylvania, Inc.*,
  504 F.3d 1223 (Fed. Cir. 2007)...........................................................................10

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
  984 F.2d 1182 (Fed. Cir. 1993)...........................................................................10

*Pharmacia Corp. v. Par Pharm., Inc.*,
  417 F.3d 1369 (Fed. Cir. 2005)...........................................................................10

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
  324 U.S. 806 (1945)...............................................................................................9

*Pure Fishing, Inc. v. Normark Corp.*,
  Case No. 10-cv-2140, 2012 WL 6138216 (D.S.C. Dec. 11, 2012) .........................15

*Safco Products Co. v. Welcom Products, Inc.*,
  799 F. Supp. 2d 967 (D. Minn. 2011) ...................................................................15

*Therasense, Inc. v. Becton Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)............................................................... passim

*Therasense, Inc. v. Becton Dickinson & Co.*,
  864 F. Supp. 2d 856 (N.D. Cal. 2012) ...................................................................1

*TV Interactive Data Corp. v. Sony Corp.*,
  Case No. 10-cv-0475, 2012 WL 6020113 (N.D. Cal. Dec. 3, 2012)........................15

## FEDERAL STATUTES

35 USC § 102...........................................................................................................11

## RULES

Fed. R. Civ. P. 56(c) ...............................................................................................8

## REGULATIONS

37 C.F.R. § 1.104 (c)(1)...........................................................................................11

## I.    INTRODUCTION

The very premise of plaintiff 01's motion is unfounded:  *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) neither abolished inequitable conduct before the Patent Office as a defense nor affects LogMeIn's inequitable conduct defense in this case. The Federal Circuit has affirmed a finding of inequitable conduct for intentionally withholding material prior art such as occurred here after *Therasense* (*see Aventis Pharm. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012)), and indeed the District Court in the *Therasense* case itself found inequitable conduct again on remand.  *See Therasense, Inc. v. Becton Dickinson & Co.,* 864 F. Supp. 2d 856, 869 (N.D. Cal. 2012).  *Therasense* did make the standards for proving inequitable conduct higher, but those standards are still met in this case.  Indeed, 01 itself apparently concluded the same thing, as the *Therasense* decision was issued in May 2011 and this case was remanded to this Court nearly four months ago, but 01 never even suggested that LogMeIn's inequitable conduct defense was deficient until filing this motion shortly before the final pretrial conference.

As described in detail in LogMeIn's Amended Answer and the expert reports of Dr. Samrat Bhattacharjee and Mr. Stephen Kunin (Ex. 1[1], Expert Report of Dr. Bhattacharjee Regarding Invalidity at ¶¶ 60-69,. 146-57; Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 4-22, 73-74; Ex. 3, Supplemental Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶ 6; Ex 4, Expert Report of Stephen Kunin ¶¶85-93; Ex. 5, First Supplemental Expert Report of Stephen Kunin ¶¶ 6-26; Ex. 6, Second Supplemental Expert Report of Stephen Kunin ¶¶ 8-14), during the reexamination of the patent-in-suit (U.S. Patent No. 6,928,479 ("the '479 patent")), two representatives of 01—Andrew Cheung, a named

---

[1]      "Ex.__," as used herein, refers to exhibits attached to the Declaration of Leslie Pearlson in Support of LogMeIn's Opposition, filed concurrently herewith.

- 1 -

inventor and the CEO of 01, and Kenneth Sheehan, the prosecuting attorney of the '479 patent—committed inequitable conduct that renders the '479 patent unenforceable.  These individuals violated their duty of candor to the PTO by failing to disclose an anticipatory and invalidating prior art reference—United States Patent No. 7,130,888 ("the '888 patent")—with the deliberate intent to deceive the PTO into confirming the asserted claims of the '479 patent.

While 01's motion repeatedly asserts that there is "no evidence" of these facts, its motion simply fails to acknowledge that evidence.  For example:

- The '888 patent is directly anticipatory of many claims of the '479 patent (and renders other claims obvious), and but for its being withheld from the PTO, those claims would have been held invalid and not have been confirmed.  This makes the '888 patent squarely material under *Therasense.*

- Messrs. Cheung and Sheehan actually knew that the '888 patent was and is material to the '479 patent, because the owner of the '888 patent (Accolade) alleged and represented to 01 in other litigation that 01's product—covered by the later '479 patent—infringed Accolade's '888 patent.  As Messrs. Cheung and Sheehan were intimately involved in that litigation, they were thus explicitly on notice that the '479 patent technology was anticipated by the '888 patent.

- ████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████
  ███████████████████████████████████████████████████
  ██████████████████████████████████████████████████
  ████████████████████████████████████ Cheung and Sheehan thus agreed and actually knew that the '888 patent was material to the '479 patent.

- 2 -

- Despite this explicit knowledge of the '888 patent and its materiality, Cheung and Sheehan never disclosed to the PTO the '888 patent (or 01's deal regarding it with Accolade)—despite having ample opportunity to do so and despite disclosing other, less relevant information to the PTO.  The clear motivation for this withholding was that if the '888 patent had been disclosed to the PTO, at least one of the relevant claims of the '479 patent would have been held invalid by the PTO and 01 would not have been able to pursue its business strategy of suing Citrix, LogMeIn, and others for alleged infringement.[2]

01 seems to suggest in its motion that because Cheung and Sheehan never capitulated at their depositions and confessed that "Yes, we wanted to deceive the PTO!", there can be no inequitable conduct.  But that is not the law, including after *Therasense*; otherwise, fraud could never be proved unless the fraudulent actor had pangs of conscience and confessed.  "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence."  *Therasense*, 649 F.3d at 1290 (citation omitted).  Given Cheung's and Sheehan's express knowledge of, and agreement to, the materiality of the '888 patent to the '479 patent, their opportunity to disclose the '888 yet refusal to do so, and their clear motivation to withhold it in order to save the '479 patent from invalidity so that it could be used to sue people under 01's new business strategy (in which Sheehan's firm has a contingent interest), an intent to deceive is the single most reasonable inference from their conduct.  As a matter of law, that inference is not dispelled by conclusory and unexplained denials that Cheung and Sheehan "did

---

[2]      In fact, as 01 has disclosed in its Canadian Securities filings, Mr. Sheehan's law firm, Baker & Hostetler, has a contingent interest in this strategy, giving them vested interest in the validity of the '479 patent. (Ex. 7, 01 Annual Information Form.)

not think about" disclosing the reference.  At a minimum, there are clear factual disputes that preclude entry of summary judgment on the issue.

## II.  STATEMENT OF GENUINE ISSUES OF MATERIAL FACT

### A.  01's Representatives Withheld a Highly Material Prior Art Reference from the PTO During the Reexamination of the '479 Patent

1.      Before and during the reexamination of the '479 patent, 01 was involved in two lawsuits regarding the '479 patent in suit and Accolade's prior art '888 patent.  Specifically, in February 2006, 01 sued Citrix Systems, Inc. ("Citrix") for infringement of the '479 patent.  (Ex. 8, Complaint, *01 Communique Laboratory, Inc. v. Citrix Systems, Inc.*, No. 1:06-cv-00253-SL (N.D. Ohio).)  But, in January 2007, a year later, Accolade sued 01 for infringement of the '888 patent, alleging that 01's product—which is covered by the '479 patent—infringed the earlier '888 patent.  (Ex. 9, Complaint, *Accolade Sys. LLC v. 01 Communique Laboratory, Inc.*, No. 6:07-cv-047 (E.D. Tex.).)  Andrew Cheung, a named inventor on the later '479 patent, and Kenneth Sheehan, 01's attorney, actively participated in both suits.  (Ex. 10, 2/10/11 Deposition of Andrew Cheung Tr. at 333-34, 338-39; Ex. 11, 2/10/11 Deposition of Kenneth J. Sheehan Tr. at 22-23).)  Mr. Cheung is also the CEO of 01 and a developer of 01's "I'm InTouch" product, which is covered by the '479 patent, and which Accolade accused of infringing the '888 patent. (Ex. 10, 2/10/11 Deposition of Andrew Cheung Tr. at 331-32.)  Having been notified by Accolade of the '888 patent and how 01's '479 patent technology infringed it, Mr. Cheung and Mr. Sheehan expressly compared the '888 patent to the later '479 patent in January 2007.  (Ex. 12, Expert Report of Harry F. Manbeck, Jr. ¶ 47.)  In their comparison, Messrs. Cheung and Sheehan did not make any formal determination that the '888 patent was a non-material piece of prior art.  Instead, Mr. Cheung merely stated that the '888 patent did not "come up in my mind." (Exhibit 10, 2/10/11 Deposition of Andrew Cheung Tr. at 351.)  While Messrs. Cheung and

Sheehan testified that they felt the '888 patent lacked certain features found in the claims of the '479 patent, they did not testify to performing a materiality analysis or making any conclusions as to whether the '888 was a cumulative, or anticipatory reference.  (Ex. 10, 2/10/11 Deposition of Andrew Cheung Tr. at 351; Ex. 11, 2/10/11 Deposition of Kenneth Sheehan Tr. at 31-2.)

2.      On December 7, 2007, at the request of Citrix, the PTO commenced an *inter partes* reexamination to reconsider whether the asserted claims of the '479 patent were valid. Mr. Cheung and Mr. Sheehan both actively participated in the reexamination.  (Ex. 10, 2/11/2011 Deposition of Andrew Cheung Tr. at 347-50; Ex. 4, 2/10/11 Deposition of Kenneth Sheehan Tr. at 53.)  01's litigations against Citrix and Accolade were ongoing when the reexamination of the '479 patent commenced.  Thus, while the reexamination was pending, Mr. Cheung and Mr. Sheehan were actively involved in litigation over the '888 patent and '479 patent, and had compared the '888 patent to the '479 patent.  However, neither Mr. Cheung nor Mr. Sheehan disclosed the '888 patent to the PTO.

3.      On December 17, 2007, 01 entered into a settlement agreement with Accolade regarding Accolade's claim that 01's later '479 patent technology infringed the earlier '888 patent.  (Ex. 13, 12/17/07 Settlement Agreement.) ████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████ ████████████ Still, neither Mr. Cheung nor Mr. Sheehan disclosed the '888 patent (or the agreement with Accolade) to the PTO.

████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████

4.     In July 2010, after issuing an Action Closing Prosecution in the '479 patent

reexamination, the PTO issued a Right of Appeal Notice that confirmed the patentability of the

asserted claims.  (Ex. 15, 8/19/09 Action Closing Prosecution; Ex. 16, 7/6/10 Right of Appeal

Notice.)  Citrix appealed, and the claims of the '479 patent are now before the PTO's Board of

Patent Appeals and Interferences.  At no point did 01 make any attempt to disclose the '888

patent to the PTO, even after LogMeIn asserted that the '888 patent invalidated the '479 patent

and that 01's failure to disclose it was inequitable conduct.

5.     In January 2011, LogMeIn's technical expert, Dr. Samrat Bhattacharjee,

submitted his expert report on invalidity in this case.  In his report, Dr. Bhattacharjee confirmed

that the '888 patent is highly material prior art that anticipates or renders obvious all of the

asserted claims of the '479 patent.  (Ex. 1, Expert Report of Dr. Bhattacharjee Regarding

Invalidity ¶¶ 60-69; *see also* Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding

Invalidity ¶¶ 4-22.)  In December 2012, Dr. Bhattacharjee supplemented his expert opinion to

address the Federal Circuit's revised claim construction, and confirmed that the '888 patent

remains highly material prior art that anticipates or renders obvious all of the asserted claims of

the '479 patent.  (Ex. 3 Supplemental Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶

6.)  Dr. Bhattacharjee also has reviewed the prior art that has been submitted to the PTO by 01

during the prosecution and reexamination of the '479 patent and has not found any reference that

is cumulative of the disclosures in the '888 patent.  (Ex. 1, Expert Report of Dr. Bhattacharjee

Regarding Invalidity ¶¶ 146-57; Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding

Invalidity ¶¶ 73-74; Ex. 3 Supplemental Expert Report of Dr. Bhattacharjee Regarding Invalidity

¶ 6.)  Moreover, 01's technical expert on validity issues, Dr. Gregory Ganger, has not identified a

single prior art reference disclosed to the PTO during the prosecution and reexamination of the

- 6 -

'479 patent that is cumulative of the '888 patent.  (Ex. 17, Opposition Expert Report of Dr. Gregory Ganger ¶¶ 321-27.)

6.      In January 2011, LogMeIn's Patent and Trademark Office practice and procedure expert, Stephen Kunin, submitted his first expert report.  In his report, relying on the opinion of Dr. Bhattacharjee regarding invalidity, Mr. Kunin confirmed that Messrs. Cheung and Sheehan violated their duty of disclosure before the PTO by withholding the '888 patent.  (Ex. 4, Expert Report of Stephen Kunin at ¶¶ 85-93.)  Mr. Kunin supplemented this report in February 2011 by rebutting statements made in 01's expert report, finding the same.  (Ex 5, Supplemental Expert Report of Stephen Kunin at ¶¶ 6-26.)  In December of 2012, Mr. Kunin further supplemented his expert report to take into account the revised standard of *Therasense*.  (Ex. 6, Second Supplemental Expert Report of Stephen Kunin at ¶¶ 8-14.)  As stated in his report, Mr. Kunin's opinion regarding Messrs. Cheung and Sheehan's inequitable conduct remains the same under the revised standard, because the '888 patent remains non-cumulative, invalidating prior art which was deliberately withheld from the PTO.  (*Id.*)

7.      To date, even after LogMeIn's expert, Dr. Bhattacharjee, explained in detail how the '888 patent anticipates the '479 patent, Mr. Cheung and Mr. Sheehan have continued to withhold the '888 patent from consideration by the PTO.

**B.      Procedural History**

1.      On September 8, 2010, 01 filed this action against LogMeIn.  (Dkt. No. 1.)  In December 2010, LogMeIn sought leave to amend its answer to add a defense of inequitable conduct based on its analysis of information learned during the discovery period.  (*See* Dkt. No. 53.)  Magistrate Judge Jones allowed this amendment over 01's opposition, holding that

Case 1:10-cv-01007-CMH-TRJ   Document 249   Filed 01/07/13   Page 12 of 25 PageID# 4876

LogMeIn had sufficiently pled inequitable conduct.  (*See* Dkt. No. 64 (order allowing amendment); Dkt. No. 66 at ¶¶ 26-34 (amended allegations of inequitable conduct).)

2.    On March 7, 2011, 01 filed an initial motion for summary judgment of no inequitable conduct on other grounds (which 01 does not raise here and has apparently abandoned).  (Dkt. No. 106.)  On May 4, 2011, the court granted LogMeIn's motion for summary judgment of non-infringement, and denied 01's motion for summary judgment of no inequitable conduct as moot.  (Dkt. No. 137.)  As 01 notes (Mem. at 1), *Therasense* was decided shortly thereafter.

3.    Over a year later, on August 2, 2012, the Federal Circuit reversed and remanded this case and revised this Court's claim construction.  (Dkt. No. 153.)  01 made *no* mention of renewing its motion or anything about inequitable conduct or *Therasense* during *either* of the two hearings held by the Court after remand at which scheduling was discussed.  (*See* Dkt. No. 171 (Tr. of 10/19/12 hearing); Dkt. No. 176 (Tr. of 11/2/12 hearing) ("Judge Hilton: is there anything for us to do other than set a trial date? . . . 01: I think short of updating exiting discovery, we're ready to pick a trial date.").)  On December 27, 2012, nearly 4 months after this case was remanded and only weeks before the final pretrial conference, 01 now said that LogMeIn's inequitable conduct claim was now somehow deficient and filed its present motion for summary judgment.  (*See* Dkt. No. 235.)  ███████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

## III.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Summary judgment is not appropriate unless there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) ("[W]hen there are disputed underlying factual elements, summary judgment is inappropriate unless the movant would prevail even on the non-movant's view of the facts.").

### B.      Inequitable Conduct

The doctrine of inequitable conduct furthers the "paramount interest" cited by the Supreme Court of ensuring that patents issue from "backgrounds free from fraud or other inequitable conduct." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945). A court may hold a patent unenforceable for inequitable conduct if a defendant provides clear and convincing evidence that the patentee withheld material information with the intent to deceive the PTO. *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363 (Fed. Cir. 2007).

Under the Federal Circuit's decision in *Therasense, Inc. v. Becton Dickinson & Co.*, 649 F.3d 1276, 1291- 294 (Fed. Cir. 2011), undisclosed information is material if it is shown, by only a preponderance of the evidence, that the PTO would not have allowed a claim to issue in light of that undisclosed information:

> This court holds that, as a general matter, the materiality required
> to establish inequitable conduct is but-for materiality. When an
> applicant fails to disclose prior art to the PTO, that prior art is but-
> for material if the PTO would not have allowed a claim had it been
> aware of the undisclosed prior art. Hence, in assessing the
> materiality of a withheld reference, the court must determine
> whether the PTO would have allowed the claim if it had been
> aware of the undisclosed reference. In making this patentability
> determination, the court should apply the preponderance of the

- 9 -

evidence standard and give claims their broadest reasonable
construction.

*Id.* at 1291.

Intent to deceive is usually inferred from the facts and circumstances surrounding the

conduct at issue. *Cargill,* 476 F.3d at 1364 ("Intent rarely can be, and need not be, proven by

direct evidence") ; *see also Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182,

1189-90 (Fed. Cir. 1993) ("'[S]moking gun' evidence is not required in order to establish an

intent to deceive . . . Rather, this element of inequitable conduct, must generally be inferred from

the facts and circumstances surrounding the applicant's overall conduct") (citation omitted).

"When a court has determined that inequitable conduct occurred in relation to one or

more claims during prosecution of the patent application, the entire patent is rendered

unenforceable." *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 877 (Fed.

Cir. 1988) (*en banc* in pertinent part). It is well established that inequitable conduct committed

during a reexamination renders the reexamined patent unenforceable *ab initio*. *Nilssen v. Osram*

*Sylvania, Inc.*, 504 F.3d 1223, 1229-30 (Fed. Cir. 2007) (affirming the district court's finding

that a patent was unenforceable based on misconduct committed during reexamination); *Marlow*

*Indus., Inc. v. Igloo Prods. Corp.,* 65 Fed. App'x 313, at 319 (Fed. Cir. 2003); *see also Larson*

*Mfg. Co. of South Dakota, Inc. v. Aluminart Prods. Ltd.*, 559 F.3d 1317, 1340 (Fed. Cir. 2009)

(remanding for further proceedings on inequitable conduct where patentee withheld material

information from the examiner during reexamination of the asserted patent); *cf. Pharmacia Corp.*

*v. Par Pharm., Inc.*, 417 F.3d 1369, 1375 (Fed. Cir. 2005) ("[I]nequitable conduct that occurs

during prosecution of a reissue application renders all the claims of the reissued patent, including

the original claims, unenforceable") (citation omitted).

- 10 -

IV.     **ARGUMENT**

A.     ***Therasense* Does Not Foreclose LogMeIn's Inequitable Conduct Defense; 01 Still Committed Inequitable Conduct Under The Revised Standard**

There is ample evidence that Mr. Cheung and Mr. Sheehan committed inequitable conduct during the reexamination of the '479 patent by withholding the '888 patent with the intent to deceive the PTO, even under the Federal Circuit's revised inequitable conduct standard.

1.     **LogMeIn's Inequitable Conduct Defense Satisfies the "But For" Materiality Standard of *Therasense***

LogMeIn's inequitable conduct defense satisfies the "but for" materiality standard of *Therasense* because it is based on Mr. Cheung's failure to disclose a non-cumulative ***invalidating*** prior art reference:  the '888 patent.  LogMeIn has submitted detailed evidence in its invalidity contentions and in the expert reports of Dr. Bhattacharjee demonstrating that the '888 patent is both non-cumulative and anticipatory.  LogMeIn first provided this evidence prior to the Federal Circuit's *Therasense* decision (Ex. 1, Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 60-69; *see also* Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 4-22) and those opinions remain the same today, after the Federal Circuit's *Therasense* decision and revised claim construction in this case.  (Ex. 3, Supplemental Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶ 6.)  Because the '888 patent is anticipatory, the PTO examiner would not have allowed all of the original claims at issue of the '479 patent to survive reexamination if 01 had submitted the '888 patent to the PTO during the reexamination. (*See* 35 USC § 102; 37 C.F.R. § 1.104 (c)(1) (" If the invention is not considered patentable, or not considered patentable as claimed, the claims, or those considered unpatentable will be rejected"); *see also* Ex. 1, Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 60-69; Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 4-22; Ex. 3 Supplemental

Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶ 6; Ex. 4, Expert Report of Stephen

Kunin ¶¶ 85-93; Ex. 5, Supplemental Expert Report of Stephen Kunin ¶¶ 6-26; Ex 6, Second

Supplemental Expert Report of Stephen Kunin ¶¶ 8-14.)  Thus, the evidence provided by

LogMeIn necessarily satisfies the "but for" materiality standard of *Therasense*.

      01 presents no evidence in its motion for summary judgment that the '888 is not

anticipatory to the '479 patent, which is an issue of fact.  *Koito Mfg. Co., Ltd. v. Turn-Key-Tech,*

*LLC*, 381 F.3d 1142, 1149 (Fed. Cir. 2004) ("Anticipation is a factual determination that is

reviewed for substantial evidence when decided by a jury") (citation omitted).  Instead, 01 claims

that there is "no evidence" of the materiality of the '888 patent (which is not true) or else that it

is "the self-serving conjecture of LMI's expert" (which is a matter of credibility, not

admissibility).  (Mem. at 2, 9-10.)  Without even addressing the anticipatory and invalidating

nature of the '888 patent, 01 argues that materiality under *Therasense* cannot be shown until a

jury determines invalidity.  (Mem. at 14.)  This is not true as a matter of law.  *Therasense* itself

held that a piece of prior art not found to be invalidating at the district court level may still be

material.  *Therasense*, 649 F.3d at 1291-92.  The Federal Circuit noted that, unlike the clear and

convincing evidence standard for invalidating a patent in the district court under 35 U.S.C. §§

102 and 103, the standard for establishing but-for materiality in the inequitable conduct context

only requires a preponderance of the evidence, requiring that courts "give claims their broadest

reasonable construction."  *Id.*  As a result, even if a withheld reference is found not to be

sufficient to invalidate the claim in district court, "***the reference may be material if it would***

***have blocked patent issuance under the PTO's different evidentiary standards.***"  *Id.* (emphasis

added); *see also Aventis Pharma v. Hospira, Inc.*, 675 F.3d 1324, 1334 (Fed. Cir. 2012).

Therefore, 01's assertion that this Court must first find the '888 patent to be invalidating art is

- 12 -

incorrect, and LogMeIn may satisfy the "but for" materiality test of *Therasense* without explicitly proving invalidity (although the two issues obviously overlap for trial).

> **2.      01's Inequitable Conduct Satisfies *Therasense's* Intent to Deceive Prong**

LogMeIn has alleged ample facts to show that Mr. Cheung and Mr. Sheehan withheld the '888 patent with the intent to deceive the PTO, which is again a factual issue.  During the reexamination of the '479 patent, Mr. Cheung and Mr. Sheehan knew that that the '888 patent was a highly material prior art reference; they were expressly told that it was by Accolade and agreed that it was with Accolade.  They have been told that it is in this lawsuit by Dr. Bhattacharjee and Mr. Kunin.  In addition, in January 2007, Mr. Cheung and Mr. Sheehan themselves made a direct comparison of the '888 patent with the '479 patent, but made no formal determination that the '888 patent was non-cumulative or did not anticipate the '479 patent.  *See* Section II.A, *supra*.

Based on all this evidence, and the monetary motivation they had to preserve the '479 patent's validity so they could sue on it, the most reasonable inference is that Mr. Cheung and Mr. Sheehan withheld the '888 patent from the PTO with the deliberate intent to deceive the PTO into confirming the '479 patent.

01 asks this Court to look for a "smoking gun" of proof of intent (Mem. at 9) , however, under the revised standard, LogMeIn need only prove that the "most reasonable inference able to be drawn from the evidence" is that Mr. Sheehan and Mr. Cheung intentionally withheld the '888 patent from the PTO.  *Therasense*, 649 F.3d at 1290.  This inference may be determined from circumstantial evidence.  *Cargill,* 476 F.3d at 1364 ("Intent rarely can be, and need not be, proven by direct evidence.")  Indeed, *Therasense* itself notes that since "direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial

- 13 -

evidence."  *See Therasense*, 649 F.3d at 1290, (citing *Larson Mfg. Co. of S.D., Inc. v. Aluminart Prods. Ltd*., 559 F.3d 1317, 1340 (Fed. Cir. 2009)).  Without offering any other credible reason for its withholding of the '888 patent from the PTO, the factual record thus far clearly is sufficient to preclude entry of summary judgment against LogMeIn on this issue.

Ultimately, if Mr. Cheung and/or Mr. Sheehan want to swear to a jury that despite that all of the contrary evidence they did not know the '888 patent was material or "they did not think about it" or "do not recall" thinking about disclosing it, they can do so and the trier of fact can decide.  But this is a factual issue of credibility on which summary judgment cannot be granted. *See Bristol-Myers Squibb Co. v. Teva Pharma. USA, Inc.,* No. 10-805-RGA, 2012 WL 2951965 at *2 (D. Del. July 19, 2012) (denying summary judgment of no inequitable conduct after *Therasense* , noting that it could not accept plaintiff's testimony regarding intent because "it would require that I find the testimony of the inventor and the attorneys to be credible" and further noting "[t]he 'materiality' question is one on which two experts differ, and I do not know which one I am going to accept.")

### 3.      01's Cited Post-*Therasense* Case Law is Not Analogous

While 01 cites numerous cases decided after *Therasense*, these cases are not analogous to the facts of this litigation.  None of these cases involve a situation where a plaintiff's own patented technology was accused of infringing a prior art patent that indeed anticipated it, yet the plaintiff never told the PTO about that prior art despite having every opportunity to do so.  None of these cases involved a situation where the plaintiff secretly agreed with the prior art's owner to give the prior art owner a cut of the proceeds in asserting the plaintiff's later, anticipated patent against third parties, in order to settle claims that the plaintiff's patented technology infringed the earlier prior art patent.  As such, 01's argument that "cases after *Therasense* have

rejected inequitable conduct claims on factual grounds such as these" is without merit.  (Mem. at 11.)

Despite 01's suggestion that *Therasense* sounded the death knell for inequitable conduct claims, the Federal Circuit has upheld findings of inequitable conduct post-*Therasense*.  *See e.g., Aventis Pharm. v. Hospira, Inc.*, 675 F.3d 1324, 1337 (Fed. Cir. 2012).  District courts have also repeatedly refused to grant summary judgment of no inequitable conduct where there are genuine issues of material fact.  *See, e.g., Pure Fishing, Inc. v. Normark Corp.*, Case No. 10-cv-2140, 2012 WL 6138216 (D.S.C. Dec. 11, 2012); *TV Interactive Data Corp. v. Sony Corp.*, Case No. 10-cv-0475, 2012 WL 6020113 (N.D. Cal. Dec. 3, 2012); *Kathrein-Werke KG v. Radiacion y Microondas S.A.*, Case No. 07-cv-2921, 2011 WL 4460393 (N.D. Ill. Sept. 26, 2011); *Avocent Redmond Corp. v. Raritan Americas, Inc.*, Case No. 10-cv-6100, 2012 WL 3114855 (S.D.N.Y. July 31, 2012); *Safco Products Co. v. Welcom Products, Inc.*, 799 F. Supp. 2d 967, 999 (D. Minn. 2011).

### B.     There is No Reason to Bifurcate Trial

LogMeIn's inequitable conduct defense should move forward with the rest of the litigation and should not be bifurcated as 01 suggests.  As an initial matter, as noted above, a finding that the '888 patent invalidates the '479 patent is not a *precondition* of a viable inequitable conduct defense.  *See supra* IV(A)(1).  Therefore, LogMeIn is not required to obtain a verdict of invalidity before it proceeds with an inequitable conduct defense.  Further, the questions of invalidity of the '479 patent in light of the '888 patent and the materiality of the '888 patent to the '479 patent are closely related, such that judicial economy (and common sense) support trying the two issues together before the jury.  *See Abbott Point of Care, Inc. v. Epocal, Inc.,* 868 F. Supp. 2d 1310, 1318 (N.D. Ala. 2012);  *see also Medtronic Xomed, Inc. v.*

*Gyrus ENT, LLC*, 440 F.Supp.2d 1333, 1336 (M.D. Fla. 2006) (finding, when there was factual overlap between legal defense of invalidity and inequitable conduct, that holding a separate bench trial on the equitable issues after the jury had heard the remainder of the evidence "would not be the most efficient use of judicial resources, and could require re-calling witnesses who will or had testified at the jury trial").

01 would suffer no unfair prejudice if inequitable conduct were tried with the remainder of the case. This procedure conforms with traditional notions of judicial economy, as bifurcating the trial would complicate trial procedure by requiring multiple witnesses to be called back to testify, creating duplicative examinations, disrupting the trial, confusing the jury, and further delaying trial. For the sake of judicial economy, LogMeIn's inequitable conduct defense should be allowed to proceed with the remainder of the case. *Abbott*, 868 F. Supp. 2d at 1317-18 ("Due to the substantial overlap in underlying facts, it will be extremely difficult to determine precisely what testimony should be presented to the jury, and what testimony should only be heard by the court. Attempting to make that determination likely will require frequent objections, numerous sidebar conferences, and other discussions outside the hearing of the jury. Such continual interruptions of proceedings not only will unnecessarily prolong the trial, but it also will distract the jury's focus.").

## V.   STATEMENT OF DISPUTED MATERIAL FACTS

The following statement of disputed material facts tracks 01's statements by lettered paragraphs.

A.   LogMeIn does not dispute that this was self-serving testimony provided by Mr. Cheung in his deposition, however LogMeIn disputes Mr. Cheung's conclusion regarding the '888 patent as well as any implication that his testimony is credible or dispositive of this motion.

(Ex. 1, Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 60-69; Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 4-22; Ex. 3 Supplemental Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 6-26; Ex. 4, Expert Report of Stephen Kunin ¶¶ 85-93; Ex. 5, Supplemental Expert Report of Stephen Kunin ¶¶ 6-26; Ex 6, Second Supplemental Expert Report of Stephen Kunin ¶¶ 8-14.)

B.      LogMeIn does not dispute this fact.

C.      LogMeIn does not dispute that this was self-serving testimony provided by Mr. Sheehan in his deposition, however LogMeIn disputes Mr. Sheehan's conclusion regarding the '888 patent, as well as any implication that his testimony is credible or dispositive of this motion. (Ex. 1, Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 60-69; Ex. 2, Reply Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 4-22; Ex. 3 Supplemental Expert Report of Dr. Bhattacharjee Regarding Invalidity ¶¶ 6-26; Ex. 4, Expert Report of Stephen Kunin ¶¶ 85-93; Ex. 5, Supplemental Expert Report of Stephen Kunin  ¶¶ 6-26; Ex 6, Second Supplemental Expert Report of Stephen Kunin ¶¶ 8-14.)

D.      LogMeIn does not dispute this fact and further adds that Mr. Sheehan failed to disclose the settlement agreement with Accolade to the PTO.  (Ex. 11, 2/10/11 Deposition of Kenneth J. Sheehan Tr. at 60-61.)

E.      LogMeIn disputes this fact in its entirety.  (*See* Supra Sec. II and the parts of the record relied on to support the facts alleged to be in dispute.)

F.      LogMeIn disputes this fact in its entirety.  (*See* Supra Sec. II and the parts of the record relied on to support the facts alleged to be in dispute.)

## VI.      CONCLUSION

For the foregoing reasons, LogMeIn respectfully requests that the Court deny 01's

motion for summary judgment of no inequitable conduct.

Dated:  January 7, 2013                    Respectfully submitted,

                                           WILMER CUTLER PICKERING HALE
                                           AND DORR LLP

                                           _____/S/_____
                                           Philip R. Seybold (VSB# 73596)

                                           1875 Pennsylvania Avenue NW
                                           Washington, DC 20006
                                           Tel.:  (202) 663-6000
                                           Fax:  (202) 663-6363
                                           Email: randy.seybold@wilmerhale.com

                                           Wayne L. Stoner (admitted *pro hac vice*)
                                           Vinita Ferrera (admitted *pro hac vice*)
                                           Rachel Gurvich (admitted *pro hac vice*)
                                           Silena Paik (admitted *pro hac vice*)
                                           Alexandra Amrhein (admitted *pro hac vice*)
                                           Leslie Pearlson (admitted *pro hac vice*)
                                           60 State Street
                                           Boston, MA 02109
                                           Tel.:  (617) 526-6000
                                           Fax:  (617) 526-5000
                                           Email: Wayne.Stoner@wilmerhale.com
                                           Email: Vinita.Ferrera@wilmerhale.com
                                           Email: Rachel.Gurvich@wilmerhale.com
                                           Email: Silena.Paik@wilmerhale.com
                                           Email: Alexandra.Amrhein@wilmerhale.com
                                           Email: Leslie.Pearlson@wilmerhale.com

                                           Nathan Walker (admitted *pro hac vice*)
                                           Arthur W. Coviello (admitted *pro hac vice*)
                                           950 Page Mill Road
                                           Palo Alto, CA 94304
                                           Tel.:  (650) 858-6000
                                           Fax:  (650) 858-6100
                                           Email: Nathan.Walker@wilmerhale.com
                                           Email: Arthur.Coviello@wilmerhale.com

                                           Charles B. Molster, III (VSB # 23613)
                                           WINSTON & STRAWN LLP
                                           1700 K Street NW

                                           - 19 -

Washington, D.C. 20006
Tel : (202) 282-5988
Fax : (202) 282-5100
Email: cmolster@winston.com

*Attorneys for Defendant LogMeIn, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of January, 2013, a true and correct copy of the foregoing document and all materials in support thereof was served electronically upon the following counsel of record:

A. Neal Seth
John P. Corrado
Katherine Lea McKnight
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW
Suite 1100
Washington, DC 20036
Tel.: (202) 861-1500
Email: nseth@bakerlaw.com
Email: jcorrado@bakerlaw.com
Email: kmcknight@bakerlaw.com

*Attorneys for Plaintiff 01*
*Communique Laboratory, Inc.*

_____/S/_____
Philip R. Seybold (VSB# 73596)
WILMER CUTLER PICKERING HALE AND
DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: randy.seybold@wilmerhale.com

*Attorney for Defendant LogMeIn, Inc.*

- 21 -

ActiveUS 104615826v.1