**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

01 COMMUNIQUE LABORATORY, INC.,   )
                                  )
                Plaintiff,        )
                                  )
        vs.                       )   Civil Action No. 1:10-cv-01007-CMH-TRJ
                                  )
LOGMEIN, INC.,                    )
                                  )
                Defendant         )
                                  )

**LOGMEIN, INC.'S PROPOSED PRELIMINARY AND FINAL JURY INSTRUCTIONS**

Defendant LogMeIn, by its counsel, pursuant to the Court's Rule 16(b) Scheduling Order, Fed. R. Civ. P. 51, and Local Civil Rule 51, hereby submits its proposed jury instructions in this matter.  By submitting an instruction on a particular topic, LogMeIn does not waive its right to argue that such instruction should not be given to the jury.  Further, LogMeIn submits these instructions without waiving any objections concerning the subject matter of the instructions, and without waiving the right to move for judgment as a matter of law or file any other motion before, during, or after trial.  LogMeIn further reserves the right to withdraw, amend, or supplement these instructions in light of changed circumstances, including any changes in law, rulings of this Court, and evidence presented at trial.

**TABLE OF CONTENTS**

PRELIMINARY JURY INSTRUCTIONS ...................................................................................1

1.      CREDIBILITY OF WITNESSES ...........................................................................1

2.      EXPERT WITNESSES ............................................................................................2

3.      WHAT A PATENT IS AND HOW ONE IS OBTAINED ....................................3

4.      THE POSITIONS OF THE PARTIES ....................................................................6

5.      BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE.............................7

6.      BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE............................8

FINAL JURY INSTRUCTIONS ..............................................................................................9

1.      GENERAL INSTRUCTIONS – PROVINCE OF COURT AND JURY...........................9

2.      EVIDENCE..............................................................................................................10

3.      EXPERT WITNESSES ..........................................................................................12

4.      CREDIBILITY OF WITNESSES .........................................................................13

5.      BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE...........................14

6.      BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE...........................15

7.      THE PARTIES AND THEIR CONTENTIONS ..................................................16

8.      THE PATENT CLAIMS – THE ROLE OF A PATENT CLAIM ...................................18

9.      THE PATENT CLAIMS – INDEPENDENT AND DEPENDENT CLAIMS .................19

10.     THE PATENT CLAIMS – CLAIM CONSTRUCTION....................................................20

11.     INFRINGEMENT – GENERALLY....................................................................21

12.     INFRINGEMENT BY LITERAL INFRINGEMENT ......................................22

13.     INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS.............................23

14.     WILLFUL INFRINGEMENT ...............................................................................24

15.     PATENT INVALIDITY – GENERALLY.............................................................25

16.     PATENT INVALIDITY – PRIOR ART ................................................................26

17.     PATENT INVALIDITY – LEVEL OF ORDINARY SKILL IN THE ART...................27

18.     PATENT INVALIDITY – ANTICIPATION ....................................................................28

19.     PATENT INVALIDITY – OBVIOUSNESS ...................................................................30

20.     PATENT INVALIDITY – NON-ENABLEMENT...........................................................32

21.     INEQUITABLE CONDUCT..........................................................................................34

22.     LACHES ......................................................................................................................36

23.     EQUITABLE ESTOPPEL.............................................................................................38

24.     DAMAGES – GENERALLY .........................................................................................40

25.     DAMAGES – REASONABLE ROYALTY ....................................................................41

26.     DAMAGES – DAMAGES PERIOD .............................................................................45

27.     JURY VERDICT ..........................................................................................................47

1.      **<u>CREDIBILITY OF WITNESSES</u>**[1]

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

---

[1] Adapted from Ninth Circuit Manual of Model Jury Instructions, Civil, 1.11; *see also* Third Circuit General Instructions for Civil Cases, 1.7.

2.      <u>**EXPERT WITNESSES**</u>[2]

You will also hear testimony from expert witnesses.  When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he or she is called an expert witness—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

---

[2] Adapted from Ninth Circuit Manual of Model Jury Instructions, Civil, 2.11; *see also* Third Circuit General Instructions for Civil Cases, 2.11.

3.      **WHAT A PATENT IS AND HOW ONE IS OBTAINED**[3]

This case involves a dispute over a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed. The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes a section called the "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, and how to make and use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes

---

[3] Adapted from the National Jury Instruction Project, Model Patent Jury Instructions (June 17, 2009) ("NJIP 2009"), 1.1; *see also* Federal Circuit Bar Association, Model Patent Jury Instructions (February 2012) ("FCBA 2012"), A.1.

the invention claimed.  In examining a patent application, the patent examiner may review information called "prior art."  Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art.  In general, though, prior art includes information about technology that existed before the claimed invention, that was publicly known or used in this country, or that was patented or described in a publication in any country.  The patent examiner considers, among other things, whether each claim in the application defines an invention that is new, useful, and not obvious when compared with the prior art.  A patent lists the prior art that the patent examiner considered; this list is called the "cited references."  The cited references include the prior art found by the patent examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an "office action."  If the examiner rejects any of the claims, the applicant may respond and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent, or that the application should be rejected and no patent should issue.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."

Just because the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent.  One or more claims may, in fact, not be patentable under the law.  For example, the PTO may not have available to it

all other prior that will be presented to you.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

4.      **THE POSITIONS OF THE PARTIES**[4]

To help you follow the evidence, I will now give you a summary of the positions of the parties.  The parties in this case are the Plaintiff 01 Communique Laboratory, Inc. and the Defendant LogMeIn, Inc.  The patent involved in this case is United States Patent Number 6,928,479, which was obtained by Steven P. Meyer, Pedro P. Nascimento, and Andrew Cheung, and transferred to 01 Communique.  For convenience, the parties and I will often refer to this patent as the '479 patent.  "479" are the last three digits of the patent number.

01 Communique alleges that LogMeIn has infringed claims 20, 24, 26, 29, 43, and 45 of the '479 patent by making products that include all of the requirements of those claims.  On the other hand, LogMeIn alleges that the asserted claims are not infringed and are also invalid and unenforceable based on inequitable conduct before the PTO.  To fulfill your duties as jurors, you must decide whether claims 20, 24, 26, 29, 43, and 45 of the '479 patent have been infringed and whether those claims are invalid or unenforceable based on inequitable conduct before the PTO.

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.

If you decide that any claim of the '479 patent has been infringed and is also valid and enforceable, you will then need to decide whether 01 is entitled to money damages to compensate for the infringement.

---

[4] Adapted from NJIP 2009, 1.3; *see also* FCBA 2012, A.2.

5.      **<u>BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE</u>**[5]

When a party has the burden of proof on any claim or defense by a preponderance of the evidence, it means the evidence must persuade you that the claim or defense is more probable than not.  You should base your decision on all of the evidence, regardless of which party presented it.

---

[5] NJIP 2009, 1.4; *see also* FCBA 2012, A.5.

6.     **<u>BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE</u>**[6]

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence must persuade you that the claim or defense is highly probable. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence. You should base your decision on all of the evidence, regardless of which party presented it.

---

[6] NJIP 2009, 1.5; *see also* FCBA 2012, A.5.

## FINAL  JURY INSTRUCTIONS

## 1.        GENERAL INSTRUCTIONS – PROVINCE OF COURT AND JURY[7]

MEMBERS OF THE JURY, now that you have heard the evidence in this case and you have heard the arguments of counsel, it comes time that I must instruct you as to the law that is applicable to this case.  And it is your duty to follow and apply that law to the facts as you find them from the evidence in the case.

You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

You are not to be concerned with the wisdom of any rule of law as stated by the Court. Regardless of any opinion you have as to what you think the law ought to be, it would be a violation of your sworn duty to ignore the law as I give it to you and apply some other law.

It would also be a violation of your sworn duty as judges of the facts to base your verdict upon anything but the evidence in this case.

---

[7] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

2.      **EVILDENCE**[8]

As I stated earlier, it is your duty to determine the facts, and in so doing you must consider only the evidence that has been admitted during the trial.

The evidence in the case consists of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence regardless of who may have produced them; and all facts which may have been admitted.

There are two types of evidence from which you may properly find the truth of the facts of this case.  One type of evidence is direct evidence, such as exhibits or the testimony of a witness.  The other is circumstantial evidence, which is the proof of circumstances pointing to the existence or nonexistence of certain facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, and you may use both direct and circumstantial evidence in determining the facts.

Arguments and statements of counsel are not evidence in the case.  However, when the attorneys on both sides stipulate or agree as to the existence of a fact, or the Court takes judicial notice of a fact, you must, unless otherwise instructed, accept the stipulation or the fact judicially noticed as evidence, and regard that fact as proven.

From time to time in their arguments the lawyers have stated what law is applicable to the case. If they made a reference, as they had a right to do, that is contrary to what I state the law to be, you must disregard what the lawyers said and abide by what the Court states the law to be.

The lawyers from time to time have referred to certain facts that came out in evidence.  If your recollection of those facts is different from the lawyers, your recollection prevails because you are the sole judges of the facts.

---

[8] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

Any evidence as to which I sustained an objection, and any evidence that I ordered stricken from the record, must be entirely disregarded.  Likewise, anything you may have seen or heard outside the courtroom about this case is not evidence, and must be entirely disregarded.

3.      **<u>EXPERT WITNESSES</u>**[9]

The rules of evidence do not ordinarily permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists for expert witnesses.  Expert witnesses are witnesses who by education, training, and experience have become expert in some art, science, profession or calling.  And they may state their opinions as to relevant and material matters in which they profess to be expert.  They may also state the reasons for their opinions.

You should consider each expert opinion received in evidence in this case and give it such weight as you think it deserves.

If you should decide that the opinion of an expert is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of an opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the expert's opinion entirely.

---

[9] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

4.        **CREDIBILITY OF WITNESSES**[10]

You as jurors are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given.  You should carefully scrutinize all the testimony, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.

Consider each witness's intelligence, motive, state of mind, and demeanor and manner while on the stand.  Consider the witness's ability to observe the matters to which he has testified and whether he impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or a transaction may see or hear it differently.  Innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of the discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making up your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.

---

[10] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

5.      <u>**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**</u>[11]

Proof by the preponderance of the evidence means to prove that something is more likely true than not true.  "A preponderance of the evidence" means such evidence, as when considered and compared to that opposed to it, has more convincing force and produces in your mind a belief that what is sought to be proved is more likely true than not.

In determining whether any fact in issue has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced them.

---

[11] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

6.      **BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**[12]

Proof by clear and convincing evidence means that the evidence must produce in your minds an abiding conviction that the truth of a fact in contention is highly probable.  This involves a greater degree of persuasion than that necessary to meet the preponderance of the evidence standard.  However, the clear and convincing burden of proof does not require proof to an absolute certainty or proof beyond a reasonable doubt, as in criminal cases.

---

[12] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

7.      **THE PARTIES AND THEIR CONTENTIONS**[13]

As I did at the start of the case, I will give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, 01 Communique contends that certain LogMeIn products infringe claims 20, 24, 26, 29, 43, and 45 of the '479 patent. These are called the "asserted claims" of the '479 patent. The LogMeIn products alleged to infringe the asserted claims are LogMeIn Free, LogMeIn Pro, LogMeIn IT Reach, LogMeIn Ignition, and Join.Me. These are called the "accused products."

LogMeIn denies that the accused products infringe the asserted claims of the '479 patent.

LogMeIn also contends that the asserted claims of the '479 patent are invalid. In particular, LogMeIn contends that the '479 patent claims are invalid as anticipated and obvious based on the prior art references discussed at trial. LogMeIn further contends that the '479 patent claims are invalid as not enabled because the named inventors could not enable their invention to work if the claimed location facility was distributed over separate computers. Invalidity is a defense to infringement. Therefore, even though the U.S. Patent and Trademark Office, or "PTO," has allowed the asserted claims of the '479 patent, you, the jury, must decide whether the asserted claims are invalid.

In addition, LogMeIn contends that the asserted claims of the '479 patent are unenforceable due to inequitable conduct before the PTO by the applicants for the '479 patent. LogMeIn contends that 01 Communique's CEO, Andrew Cheung, committed inequitable conduct during the PTO's reexamination of the '479 patent because he made a deliberate

---

[13] Adapted from NJIP 2009, 2.1; FCBA 2012, B.1; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

decision to withhold a known material reference, namely the '888 patent, and he did so in order to deceive the PTO into granting the '479 patent.

Your job is to decide whether the asserted claims of the '479 patent have been infringed and whether the asserted claims are invalid.  If you decide that a claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to 01 Communique as compensation for the infringement.

8.      **THE PATENT CLAIMS – THE ROLE OF A PATENT CLAIM**[14]

Before you decide whether LogMeIn has infringed 01 Communique's asserted patent claims and whether the claims are invalid, you must understand the role of patent claims.

Patent claims are numbered sentences at the end of the patent that are intended to define, in words, the boundaries of the invention.  The boundaries are defined by the requirements set forth in each claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.

Only the claims of the patent can be infringed.  Neither the written description, nor the drawings of a patent can be infringed.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

---

[14] Adapted from the American Intellectual Property Law Association's 2008 Model Patent Jury Instructions ("AIPLA 2008"), 2.0; FCBA 2012, B.2.1-2.2; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

9.      **THE PATENT CLAIMS – INDEPENDENT AND DEPENDENT CLAIMS**[15]

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claims 20, 24, and 26 of the '479 patent are each independent claims.

A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements.  In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claims to which it refers and then adds its own additional requirement.  In this case, claims 29, 43, and 45 of the '479 patent are each dependent claims.

---

[15] Adapted from FCBA 2012, B.2.2a; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

10.   **THE PATENT CLAIMS – CLAIM CONSTRUCTION**[16]

It is my job as judge to provide to you the meaning of any claim language that must be interpreted.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will now tell you the meaning of the term "location facility" as it is used in the asserted claims of the '479 patent.

A "location facility" is:

> software on a locator server computer that: (1) receives a request for communication with the personal computer from the remote computer; (2) determines the then current location of the personal computer; (3) creates a communication channel between the remote computer and the personal computer; and (4) creates one or more communication sessions between the remote computer and the personal computer.  The locator server computer may comprise one or more computers, and the location facility may be distributed among one or more locator server computers.

You should give the rest of the words in the claims their ordinary meaning to a person skilled in the art in the context of the patent specification and the prosecution history of the patent before the United States Patent and Trademark Office.

---

[16] Adapted from AIPLA 2008, 2.1; FCBA 2012, B.2.3.  The claim construction of "location facility" is quoted from *01 Communique Lab. Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1299-1300 (Fed. Cir. 2012); *see also Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

## 11.   <u>INFRINGEMENT – GENERALLY</u>[17]

I will now instruct you as to the rules you must follow when deciding whether 01 Communique has proven that LogMeIn has infringed any of the asserted claims of the '479 patent.

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention within the United States during the term of the patent.  Any person or business entity that has engaged in any of those acts with the claimed invention of the patent without the patent owner's permission infringes the patent. Here, 01 Communique alleges that the accused LogMeIn products infringe claims 20, 24, 26, 29, 43, and 45 of the '479 patent.

---

[17] Adapted from NJIP 2009, 3.1; AIPLA 2008, 3.1; and FCBA 2012, B.3.1; *see also Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

12.   **INFRINGEMENT BY LITERAL INFRINGEMENT**[18]

        In order to prove literal infringement of an asserted claim of the '479 patent, 01

Communique must prove that each of the requirements (limitations) of the asserted claim is met

by a preponderance of the evidence, *i.e.*, that it is more likely than not that LogMeIn's products

meet each and every limitation of the claim.  If the accused product or method omits any

limitation recited in a given claim, then you must find that LogMeIn has not literally infringed

that claim.

        You must determine infringement with respect to each asserted claim and each accused

product individually.  There is one exception to this rule.  If you find that a claim on which

another claim depends is not infringed, there cannot be infringement of any dependent claim that

refers directly or indirectly to that claim.  On the other hand, if you find that an independent

claim has been infringed, you must still decide, separately, whether the accused products meet

additional requirements of any dependent claims and thus whether those dependent claims have

also been infringed.

_____

[18] Adapted from FCBA 2012, B.3.1a; AIPLA 2008, 3.2; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

13.     __INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS[19]__

Under the doctrine of equivalents, a product infringes a patent claim if it contains

elements or parts that are identical or equivalent to all limitations of the claim.  The doctrine of

equivalents, however, does not permit you to compare the overall accused products with the

patent claims as a whole.  Instead, you must consider whether a particular element or part is

identical or equivalent to a limitation of the asserted claims on a limitation-by-limitation basis.

In order to prove infringement by "equivalents," 01 Communique must prove the

equivalency of the accused structure to each claim limitation by a preponderance of the evidence.

You may only  find that a claim limitation is present in an accused product under the

doctrine of equivalents if a person having ordinary skill in the art would have considered the

differences between that claim limitation and an element in the accused product to be

"insubstantial."  One way of proving that the differences are "insubstantial" is to show that the

accused structure or step: (1) performs substantially the same function; and (2) works in

substantially the same way (3) to achieve substantially the same result, as the requirement of the

claim.  But you may also consider other factors such as whether a patent limitation and its

alleged equivalent are interchangeable.

You must also consider whether 01 gave up coverage of the alleged equivalent in patent

prosecution by amendments or remarks it made to the PTO and so is now estopped to assert that

something is equivalent.

---

[19] Adapted from FCBA 2012, B.3.1c; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case
No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).  LogMeIn does
not believe that the doctrine of equivalents should be decided by the jury for the reasons set forth
in its motion in limine Dkt. No. 300 and so objects to instructions on that subject, but
understands the Court's ruling to the contrary and so proposes the following instruction
concerning the issue.

14.    **WILLFUL INFRINGEMENT**[20]

01 Communique claims that LogMeIn has willfully infringed the '479 patent. The determination of whether LogMeIn's infringement, if any, was willful will not affect the amount of damages, if any, that you may assess. The purpose of this determination is to aid me in making decisions that I may later be called upon to make.

In order to prove willful infringement, 01 must prove infringement and prove by clear and convincing evidence that:

(1)  LogMeIn was aware of 01 Communique's patent;

(2)  LogMeIn acted despite an objectively high likelihood that its actions infringed a valid patent; and

(3) This objectively high likelihood of infringement was either known or so obvious that it should have been known to LogMeIn.

In making the determination as to willfulness, you must consider the totality of the circumstances.  The totality of the circumstances comprises a number of factors such as whether LogMeIn intentionally copied the claimed invention or a product covered by 01 Communique's patent, and whether LogMeIn presented a substantial defense to infringement, including the defenses that the patent is invalid or unenforceable.

_____

[20] Adapted from AIPLA 2008, 13; FCBA 2012, 3.8; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007). LogMeIn does not believe willfulness of infringement should be decided by the jury for the reasons set forth in its motion in limine Dkt. No. 291 and so objects to instructions on that subject, but understands the Court's ruling to the contrary and so proposes the following instruction concerning the issue.

15.   **<u>PATENT INVALIDITY – GENERALLY</u>**[21]

Patent invalidity is a defense to patent infringement.  Even though the PTO has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the asserted claims of the '479 patent are valid.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that LogMeIn bears the burden of proving by clear and convincing evidence that the asserted claims are invalid.

---

[21] Adapted from NJIP 2009, 5.1; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

16.   **<u>PATENT INVALIDITY – PRIOR ART</u>**[22]

"Prior art" is a legal phrase which refers to the accumulated knowledge that was available to the public prior to the date of the invention claimed in the patent in suit, or that was published more than one year before the application for the patent in suit was filed.  In this case, the application for the '479 patent was filed on June 16, 2000.

Prior art includes such technology that was known or used by others in this country, or patented or described in a printed publication in this country or a foreign country, before the invention claimed in the '479 patent.

Patents and published patent applications are prior art if they have a priority date in the United States that is before the invention claimed in the '479 patent.

All publications, including patents and published patent applications, that were published more than one year before the filing date of the '479 patent application are also deemed to be prior art even if the date of the invention of the '479 patent is earlier.

---

[22] Adapted from NJIP 2009, 5.5; FCBA 2012, 4.3a; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

17.    <u>**PATENT INVALIDITY – LEVEL OF ORDINARY SKILL IN THE ART**</u>[23]

Several times in my instructions I will refer to a person of ordinary skill in the art of remote access technology.  It is up to you to decide the level of ordinary skill in the art.  You should consider all of the evidence introduced at trial in making this decision, including:

(1)  the levels of education and experience of persons working in the field of remote access technology;

(2)  the types of problems encountered in the field of remote access technology; and

(3)  the sophistication of the technology.

01 Communique contends that a person of ordinary skill in the art at the time the '479 patent was filed would have had a Bachelor of Science degree in computer science or computer engineering, and three years of experience in the field of the invention (computer networking and distributed systems).

LogMeIn contends that a person of ordinary skill in the art would have had a Bachelor of Science degree in computer science or computer engineering, and either would have successfully completed at least one course in computer networking or would have two years of equivalent industry experience in computer networking or related fields.

---

[23] Adapted from NJIP 2009, 5.13; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

## 18.   <u>PATENT INVALIDITY – ANTICIPATION</u>[24]

LogMeIn contends that the asserted claims of the '479 patent are invalid because the claimed invention is anticipated by the prior art.

For a claim to be invalid as anticipated by the prior art, all of the claim requirements must have been described in a single previous prior art publication or device.  In patent law, such previous publication or device is called a "prior art reference."  If a patent claim is not new, we say it is "anticipated" by a prior art reference.

To anticipate a patent claim, the disclosure in the prior art reference need not be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of remote access technology looking at the reference would recognize that the complete claimed invention was disclosed. In addition, an anticipatory prior art reference is presumed to enable one of ordinary skill in the art to make and use the claimed invention.

Here, the invention claimed in the '479 patent may be anticipated in one of three ways:

(1) First, the claimed invention is anticipated if it was already described in another U.S. patent that was filed before June 16, 2000, which is the filing date of the '479 patent application.

(2) Second, the claimed invention is anticipated if it was described in a printed publication anywhere in the world before June 16, 1999, which is one year before the filing date of the '479 patent application.

---

[24] Adapted from NJIP 2009, 5.5-5.7; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007); *In re Antor Media Corp.*, 689 F.3d 1282, 1288-89 (Fed. Cir. 2012) (anticipatory prior art references are presumed to enable one of ordinary skill in the art to make and use the invention).

(3) Third, the claimed invention is anticipated if it was already publicly known or publicly used by others in the United States before 01 Communique's date of invention.

If a patent claim is anticipated for any of these reasons, you must find that claim invalid.

## 19.   **PATENT INVALIDITY – OBVIOUSNESS**[25]

In order to be patentable, a claimed invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

LogMeIn may establish that a patent claim is invalid as obvious by showing, by clear and convincing evidence, that it would have been obvious to a person of ordinary skill in the art of remote access technology.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of remote access technology at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.  In considering whether a claimed invention is obvious, you may consider whether a person having ordinary skill in the art of remote access technology would have been motivated to combine known elements to arrive at the claimed invention, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

---

[25] Adapted from FCBA 2012, B.4.3c; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

(6) whether the change resulted more from design incentives or other market forces.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention. In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may or may not have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

(1) whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2) whether the invention satisfied a long-felt need;

(3) whether others had tried and failed to make the invention;

(4) whether others invented the invention at roughly the same time;

(5) whether others copied the invention;

(6) whether there were changes or related technologies or market needs contemporaneous with the invention;

(7) whether the invention achieved unexpected results;

(8) whether others in the field praised the invention;

(9) whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(10) whether others sought or obtained rights to the patent from the patent holder; and

(11) whether the inventor proceeded contrary to accepted wisdom in the field.

20.     **PATENT INVALIDITY – NON-ENABLEMENT**[26]

LogMeIn contends that asserted claims of the '479 patent are invalid because the patent does not enable a person of ordinary skill in the art to make and use the full scope of the claimed invention. To succeed, LogMeIn must show by clear and convincing evidence that the description of the claimed invention does not provide enough information to have allowed a person of ordinary skill in the field of remote access technology to make and use the full scope of the claimed invention when the patent application was filed, which is June 16, 2000. If a patent claim is not enabled, it is invalid.

A patent is not enabled if a person of ordinary skill in the art would be required to engage in undue experimentation to make and use the full scope of the claimed invention. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person of ordinary skill would have to experiment unduly in order to make and use the invention, you may consider the following factors:

(1) the time and cost of any necessary experimentation;

(2) how routine any necessary experimentation is in the field of remote access technology;

(3) whether the patent discloses specific working examples of the claimed invention;

(4) the amount of guidance presented in the patent;

(5) the nature and predictability of the field of remote access technology;

(6) the level of ordinary skill in the field of remote access technology; and

(7) the scope of the claimed invention.

---

[26] Adapted from FCBA 2012, B.4.2b.

None of these factors is alone dispositive.   You must make your decision regarding enablement required based upon all of the evidence presented to you.

21.    <u>INEQUITABLE CONDUCT</u>[27]

Every applicant for a patent has a duty of candor and good faith in its dealing with the

U.S. Patent and Trademark Office, or "PTO." This duty of candor to the PTO is important

because the PTO has limited resources to review patent applications.

When a person involved in the prosecution of a patent application fails to supply material

information and does so with an intent to deceive the PTO, he or she may commit what is called

"inequitable conduct." When inequitable conduct occurs during the examination of an

application, any patent that issues from that application is unenforceable as a matter of fairness.

This means that even if the patent would otherwise be deemed valid, the patent holder is barred

from asserting the patent against others.

I will now explain to you what LogMeIn must do to establish that a withheld reference

was "material" and that it was withheld with the "intent to deceive" the PTO.

To establish the "materiality" of the withheld prior art reference, namely the '888 patent,

LogMeIn has the burden to prove, by *a preponderance* of the evidence, that the PTO would not

have allowed an asserted claim if the PTO had been aware of the '888 patent. That means that

LogMeIn must show that it is more likely than not that the PTO would not have issued the

asserted claims the '479 patent under the broadest reasonable construction of the claims.  You

may find that a reference is material for purposes of inequitable conduct even if the reference

does not invalidate the patent under the clear and convincing standard for invalidity.

To establish the "intent to deceive the PTO" element, LogMeIn has the burden to prove,

by clear and convincing evidence, that the applicant for the '479 patent, Andrew Cheung, made a

deliberate decision to withhold a known material reference from the PTO.  In other words,

---

[27] Adapted from FCBA 2012, B.5.1; *Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011).

LogMeIn must show that Mr. Cheung knew of the '888 patent, knew that it was material, and made a deliberate decision to withhold it.  Because direct evidence of deceptive intent is rare, you may infer intent from indirect and circumstantial evidence.  However, to meet the clear and convincing evidence standard, the specific intent to deceive the PTO must be the most reasonable inference able to be drawn from the evidence.

22.  **LACHES**[28]

LogMeIn contends that 01 Communique is not entitled to recover damages for acts that occurred before it filed a lawsuit because: (1) 01 Communique delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) LogMeIn has been or will be prejudiced in a significant way due to 01 Communique's delay in filing the lawsuit.  This is referred to as laches.  LogMeIn must prove delay and prejudice by a preponderance of the evidence.

Whether 01 Communique's delay was unreasonably long and unjustified is a question that must be answered by considering the facts and circumstances as they existed during the period of delay.  There is no minimum amount of delay required to establish laches.  If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. This presumption shifts the burden of proof to 01 Communique to come forward with evidence to prove that the delay was justified or that material prejudice did not result, and if 01 Communique presents such evidence, the burden of proving laches remains with LogMeIn.  Laches may be found for delays of less than six years if there is proof of unreasonably long and unjustifiable delay causing material prejudice to LogMeIn. Facts and circumstances that can justify a long delay can include:

(1)  being involved in other litigation during the period of delay;

(2)  being involved in negotiations with LogMeIn during the period of delay;

(3)  poverty or illness during the period of delay;

(4)  wartime conditions during the period of delay;

---

[28] Adapted from FCBA 2012, B.5.2.

(5) being involved in a dispute about ownership of the patent during the period of delay; or

(6) minimal amounts of allegedly infringing activity by LogMeIn during the period of delay.

If you find unreasonable and unjustified delay occurred, to find laches, you must also determine if LogMeIn suffered material prejudice as a result of the delay.  Prejudice to LogMeIn can be evidentiary or economic.  LogMeIn does not need to prove both evidentiary and economic prejudice; either is sufficient by itself to establish prejudice.

Whether LogMeIn suffered evidentiary prejudice is a question that must be answered by evaluating whether delay in filing this case resulted in LogMeIn not being able to present a full and fair defense on the merits to 01 Communique's infringement claim.  Not being able to present a full and fair defense on the merits to an infringement claim can occur due to the loss of important records, the death or impairment of an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.

Economic prejudice is determined by whether or not LogMeIn changed its economic position in a significant way during the period of delay resulting in losses beyond merely paying for infringement (such as if LogMeIn could have switched to a different product if sued earlier), and also whether LogMeIn's losses as a result of that change in economic position likely would have been avoided if 01 Communique had filed this lawsuit sooner.

In all scenarios though, the ultimate determination of whether laches should apply in this case is a question of fairness, given all the facts and circumstances.

23. **EQUITABLE ESTOPPEL**[29]

The owner of a patent may forfeit its right to any relief from an infringer where: (1) the patent holder communicates something in a misleading way to the infringing party about the lack of infringement or about not being sued, (2) the infringer relies upon the misleading communication from the patent holder, and (3) the infringer will be materially harmed if the patent holder is allowed to assert a claim relating to the issue that is inconsistent with the patent holder's prior misleading communication. LogMeIn must prove each of these elements by a preponderance of the evidence.  This is referred to as an "equitable estoppel" and it is a defense that LogMeIn contends precludes any recovery by 01 Communique in this lawsuit.

LogMeIn contends that 01 Communique made a misleading communication that it would not sue LogMeIn for infringement of the '479 patent before 01 Communique filed this lawsuit. A communication may be made through written or spoken words, conduct, silence, or a combination of words, conduct, and silence.  Conduct may include action or inaction. Whether in fact 01 Communique communicated to LogMeIn that it would not sue LogMeIn on the '479 patent prior to the filing of this lawsuit, and whether in fact that communication, if you find there to have been any, was misleading, are questions that must be answered by considering the facts and circumstances as they existed at the time.

Material harm to LogMeIn can be evidentiary or economic in form.

Whether LogMeIn suffered evidentiary harm is a question that must be answered by evaluating whether LogMeIn will be unable to present a full and fair defense on the merits of 01 Communique's claims.  Not being able to present a full and fair defense on the merits of 01 Communique's claims can occur due to the loss of important records, the death or impairment of

---

[29] Adapted from FCBA 2012, B.5.3.

an important witness, the unreliability of memories about important events because they occurred in the distant past, or other similar types of things.

Whether LogMeIn suffered economic prejudice is a question that must be answered by evaluating whether LogMeIn changed its economic position as a result of its reliance on any misleading communication from 01 Communique that it would not sue LogMeIn for infringement of the '479 patent, resulting in losses beyond merely paying for infringement (such as if LogMeIn could have switched to a different product if sued earlier) and whether losses as a result of any change in economic position could have been avoided.

24.   **<u>DAMAGES – GENERALLY</u>**[30]

If you find that LogMeIn infringed any valid claim of the '479 patent, but only then, you must then consider what amount of damages to award to 01 Communique. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate 01 Communique for any infringement. Damages are not meant to be a punishment. Your damages award, if you reach this issue, should put 01 Communique in approximately the same financial position that it would have been in had the infringement not occurred.

01 Communique has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that 01 Communique establishes that it more likely than not suffered. Damages may not be proven by speculation.

---

[30] Adapted from FCBA 2012, B.6.1; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

25.    **<u>DAMAGES – REASONABLE ROYALTY</u>**[31]

In this case, 01 Communique seeks a reasonable royalty damages.  If you find that 01 Communique has established infringement, then you must determine the reasonable royalty that 01 Communique should receive to compensate it for the infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place before the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been at that time, and assume that they would have acted reasonably in their negotiations. In determining the damages, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty that one party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty, but only to the extent that the evidence aids in assessing the likely result of  the hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

---

[31] Adapted from FCBA 2012, B.6.1 and B.6.5-7; *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1) any royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty;

(2) any rates paid by the licensee for the use of other patents comparable to the patent-in-suit;

(3) the nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

(4) whether the licensor had an established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

(5) any commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter;

(6) the effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;

(7) the duration of the patent and the term of the license;

(8) the established profitability of the product made under the patents, its commercial success, and its current popularity;

(9) the utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

(10) the nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11) the extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

(12) the portion of the profit or of the selling price that may be customary in the particular business or in a comparable business to allow for the use of the invention or analogous inventions;

(13) the portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14) the opinion and testimony of qualified experts; and

(15) the amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

## 26.   <u>DAMAGES – DAMAGES PERIOD</u>[32]

In determining the amount of damages, you must determine when the damages began. Damages commence on the date that LogMeIn had both infringed and been notified of the alleged infringement of the '479 patent.

Because 01 Communique alleges that its "I'm InTouch" product includes the claimed invention of the '479 patent, to determine when the damages period begins, you must first determine whether and when 01 Communique began "marking" its "I'm InTouch" product with the '479 patent number.  "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. This means that 01 Communique must show that it marked substantially all of the products it made, offered for sale, or sold under the '479 patent, and that 01 Communique made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '479 patent also marked the products with the patent number.  In addition, the patent laws require that once a patentee begins marking, the marking must be substantially consistent and continuous throughout the damages period.

01 Communique has the burden to prove by a preponderance of the evidence if and when it began complying with the marking requirement.  If 01 Communique has marked its "I'm InTouch" product, then the damages period begins when 01 Communique first began marking its product, unless you have that found laches or equitable estoppel precludes damages, as I instructed you before.

---

[32] Adapted from FCBA 2012, 6.8; *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

However, if you find that 01 Communique has not shown that it marked its I'm InTouch product with the patent number or made reasonable efforts to ensure that its licensees marked any products covered by the '479 patent, you must determine the date that LogMeIn received actual notice of the '479 patent and the specific products alleged to infringe.   Actual notice means that 01 Communique communicated to LogMeIn a specific charge of infringement of the '479 patent by a specific accused product or device.  The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed, unless damages are otherwise precluded.  01 Communique has the burden to prove the date of actual notice to LogMeIn by a preponderance of the evidence.

27.    <u>**JURY VERDICT**</u>[33]

As you all retire to deliberate on your verdict, your first duty will be that of selecting a foreperson from among you.  The foreperson will preside over your deliberations, and will be your spokesperson here in Court.  You will then proceed with a rational discussion of the evidence for the purpose of reaching a unanimous verdict.

The verdict must represent the considered judgment of each juror.  Each of you should decide for yourself in the context of the evidence and the law, but give proper consideration to the views of other jurors.  Reconsider your views if persuaded by a rational discussion, but do not do so solely for the sake of reaching a unanimous verdict.

During your deliberations you will be provided with copies of the exhibits admitted during the trial, and you may refer to the exhibits as necessary in your discussions.

Forms of the verdict have been prepared for your convenience.  I will now go over the verdict forms with you so that you understand them.  You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form which sets forth the verdict upon which you unanimously agree; and then return with your verdict to the courtroom.

You may now retire to the jury room to conduct your deliberations.

---

[33] Adapted from *Verizon Services Corp. v. Vonage Holdings Corp.*, Case No. 1:06-cv-682 (Dkt. 485) (Final Jury Instructions, Trial Tr. March 7, 2007).

Dated: March 11, 2013

Respectfully submitted,

/S/ *Charles B. Molster, III*
Charles B. Molster, III
(VSB No. 23613)
Attorney for Defendant LogMeIn, Inc.
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Tel : (202) 282-5988
Fax : (202) 282-5100
Email: cmolster@winston.com

Wayne L. Stoner (admitted *pro hac vice*)
Vinita Ferrera (admitted *pro hac vice*)
Rachel Gurvich (admitted *pro hac vice*)
Silena Paik (admitted *pro hac vice*)
Alexandra Amrhein (admitted *pro hac vice*)
Leslie Pearlson (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
Email: Wayne.Stoner@wilmerhale.com
Email: Vinita.Ferrera@wilmerhale.com
Email: Rachel.Gurvich@wilmerhale.com
Email: Silena.Paik@wilmerhale.com
Email: Alexandra.Amrhein@wilmerhale.com
Email: Leslie.Pearlson@wilmerhale.com

Nathan Walker (admitted *pro hac vice*)
Arthur W. Coviello (admitted *pro hac vice*)
950 Page Mill Road
Palo Alto, CA 94304
Tel.: (650) 858-6000
Fax: (650) 858-6100
Email: Nathan.Walker@wilmerhale.com
Email: Arthur.Coviello@wilmerhale.com

Philip R. Seybold
(VSB#73596)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: randy.seybold@wilmerhale.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this March 11, 2013, the foregoing document was served

electronically upon the following counsel of record:

A. Neal Seth
John P. Corrado
Katherine Lea McKnight
BAKER & HOSTETLER LLP
1050 Connecticut Ave. NW, Suite 1100
Washington, DC 20036
Tel.: (202) 861-1500
Email: nseth@bakerlaw.com
Email: jcorrado@bakerlaw.com
Email: kmcknightbakerlaw.com

*Attorneys for Plaintiff 01*
*Communique Laboratory, Inc.*

*/S/ Charles B. Molster, III*
Charles B. Molster, III
(VSB No. 23613)
Attorney for Defendant LogMeIn, Inc.
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20006
Tel : (202) 282-5988
Fax : (202) 282-5100
Email: cmolster@winston.com